BOYD v. THE WABASH WESTERN RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

---

1.   **Negligence**: RAILROAD : DEATH FROM PASSING TRAIN. Plaintiff brought suit for the death of her husband, who was killed by the defendant's passing railroad train. The evidence showed that the deceased kept, in the town of Renick, a hotel situated about one hundred feet north of the depot; that defendant's tracks were between the hotel and the depot, and a plank walk, used by the public, led from the hotel over the tracks to the platform of the depot; that deceased, in managing his business, was in the habit of going to the depot on the arrival of all passenger trains stopping at the station; that, at the time of the accident, an excursion train approached from the west on the time of the regular mail train, which latter usually ran over the crossing from the hotel at a speed of three or four miles an hour, and stopped at the platform just east of the crossing. The facts further showed that the excursion train, as it approached the crossing, sounded its whistle and

Boyd v. The Wabash Western Ry. Co.

rang its bell, but continued its speed without stopping, going at a rate of forty or forty-five miles an hour. Deceased, who, from the inside of the hotel, heard the train whistle, immediately came out and started for the depot, going at a brisk gait, and, without checking his speed, passed onto the track in front of the engine, and was struck and killed just as he was making his last step over the track. He was a small, active man, quick in his movements, about fifty-two years of age, and in the enjoyment of his faculties. It further appeared that the train was in plain view of the deceased while he was going from his hotel to the track and that he was in like view of the persons in charge of the engine, and there was also evidence tending to prove that, if the engineer had begun to check the speed of his train three hundred feet from the point of the collision, the accident could have been averted. *Held* that deceased was in a perilous position only when he stepped on the track within range of the passing train, and that, as it was then impossible for the engineer to stop the train in time to avert the accident, plaintiff could not recover, and a demurrer to her evidence should have been sustained.

2.   **Contributory Negligence**: CROSSING RAILROAD TRACK: PERIL-OUS POSITION. It was the duty of deceased, in approaching the crossing, to look and listen for the train, for the purpose of avoiding injury from it; and, if by so doing he could have seen the approaching train, stopped his progress, and thus avoided the collision, he was guilty of contributory negligence.

3.   ———: ———: PRESUMPTION. If the servants of defendant in charge of the train saw the deceased approaching the track, they had the right to presume that he would not attempt to cross immediately in front of the train, and had the right to proceed without abating its speed.

4.   **Railroad**: CROSSING TRACK: PSYCHOLOGY. An engineer of a railroad train is not required to be such an expert in psychology as to be able to read the mind of a man, in possession of his faculties, approaching the track, and to foretell that he will act differently from an ordinarily prudent person.

*Appeal from Jackson Circuit Court.* — HON. T. A. GILL, Judge.

REVERSED.

*F. W. Lehmann* and *George S. Grover* for appellant.

(1)   The rules of the company, governing the operation of extra trains, were irrelevant, the train in question not being an extra, the rules being exclusively for

the government of employes, and it not appearing that Mr. Boyd was familiar with them, or that he relied upon their observance; and the failure, if any, to observe them had nothing to do with the accident. *Stepp v. Railroad*, 85 Mo. 223. (2) The demurrer to the evidence should have been sustained, it appearing from the evidence that Mr. Boyd met his death because of his own negligence in attempting to cross in front of a rapidly moving train, which he both saw and heard in abundant time for self-protection, and that, after he came into his position of peril, or even after it became apparent that he would place himself in a position of peril, the defendant's employes were powerless to avert the injury to him. *Moody v. Railroad*, 68 Mo. 470; *Frick v. Railroad*, 75 Mo. 595; *Fox v. Railroad*, 85 Mo. 679; *Rine v. Railroad*, 88 Mo. 392; *Yancey v. Railroad*, 93 Mo. 433; *Dunkman v. Railroad*, 95 Mo. 232; *Williams v. Railroad*, 96 Mo. 275. (3) The instruction given at plaintiff's request was erroneous, because, *first*, not applicable to the facts of the case; *second*, against the facts; *third*, charging the defendant's employes with knowledge that a man, going to meet a train, and within plain sight and sound of it, was not observant of it, and would place himself in peril of it, and holding them bound to act, not in view of what he had done, but in anticipation of what he was "going" to do, and this when there was nothing in his manner to suggest that he would put himself in peril. *Moody v. Railroad*, 68 Mo. 470; *Maloy v. Railroad*, 84 Mo. 270; *Yancey v. Railroad*, 93 Mo. 433. (4) The second instruction given by the court was erroneous, for the same reasons assigned against the instruction given at plaintiff's request, and because there was no evidence to warrant any finding that the defendant's employes could have observed anything in Mr. Boyd's manner to indicate that he was not observant of the train, and intended to put himself in its way. Authorities cited

under points 2 and 3. (5) The instructions asked by defendant, and refused, should have been given. Authorities cited under points 2 and 3.

*W. J. Hollis* for respondent.

(1) The plaintiff was entitled to have the question of contributory negligence submitted to the jury. Beach on Con. Neg., p. 71; *Railroad v. Ogier,* 35 Pa. St. 71; *Brasswell v. Railroad,* 84 N. Y. 241; *Railroad v. Steinberg,* 17 Mich. 99; *Moberly v. Railroad,* 17 Mo. App. 542; *Leslie v. Railroad,* 88 Mo. 51; *Cartwright v. Railroad,* 52 Mich. 606; *Tetherow v. Railroad,* 98 Mo. 84. (2) The fact of defendant's custom with its trains at that time and place for so long was a circumstance which could have been properly considered by the jury, had the question of contributory negligence been submitted. Lawson on Usages and Customs, sec. 21, pp. 40–2; Wood on Master & Servant, pp. 401–776; *Libby v. Railroad,* 82 Mo. 299, and some of the cases above cited. (3) If the servants of defendant saw, or by the exercise of reasonable care and watchfulness could have seen, Boyd in peril, or carelessly going into peril, in time to have avoided injuring him, by the use of every and all the means at their command, with safety to the train and passengers, and failed to do so, defendant is liable. *Kellny v. Railroad,* 101 Mo. 67; *Hilz v. Railroad,* 101 Mo. 36; *Railroad v. Blakely,* 59 Ala. 471; *Whitehead v. Railroad,* 99 Mo. 263; *Guenther v. Railroad,* 95 Mo. 286; *Dunkman v. Railroad,* 95 Mo. 232. (4) If the servants of defendant were guilty of any acts of negligence immediately prior to their discovery of Boyd's peril, which was the cause of their being unable to avert the injury, defendant is liable. *Brooks v. Railroad,* 35 Mo. App. 571; *Maher v. Railroad,* 64 Mo. 267; *Guenther v. Railroad,* 95 Mo. 287; *Dunkman v. Railroad,* 95 Mo. 232. (5) Running at such a high rate of speed at such a populous and public place was gross negligence.

*Taylor v. Railroad*, 83 Mo. 390 ; *Stepp v. Railroad*, 85 Mo. 229 ; *Stephens v. Railroad*, 86 Mo. 221 ; *Young v. Railroad*, 79 Mo. 336. ( 6 ) Same duty devolved on defendant's servants at this crossing or walk, as at one laid out and dedicated to the public. *Kime v. Railroad*, 90 Mo. 314; *Sweeny v. Railroad*, 10 Allen, 368, and cases therein cited ; *Murphy v. Railroad*, 133 Mass. 121 ; *Brown v. Railroad*, 50 Mo. 461. ( 7 ) Defendant's servants were guilty of wanton and reckless conduct. Cooley on Torts, p. 668 ; *Whitehead v. Railroad*, 99 Mo. 263 ; *Wilkins v. Railroad*, 101 Mo. 93 ; *Stepp v. Railroad*, 85 Mo. 229. ( 8 ) The defendant failed to introduce evidence, but relied on its demurrer and instructions at close of plaintiff's case ; which action warranted the jury in believing all the evidence most favorable to plaintiff, with all reasonable inferences which could fairly be drawn therefrom. *Rine v. Railroad*, 100 Mo. 234; *Noeninger v. Vogt*, 88 Mo. 592 ; *Wilson v. Bd. of Ed.*, 63 Mo. 140 ; *Buesching v. Gas Co.*, 73 Mo. 219. ( 9 ) The jury could well believe that the servants actually saw Boyd running for the depot, "looking only where he was going," slouch hat on, knowing from his actions that he did not intend to stop nor look up, and this when they were from six hundred feet to nine hundred feet away. *Rine v. Railroad*, 100 Mo. 228; *Stepp v. Railroad*, 85 Mo. 223, 230. ( 10 ) "Engineer must do more than look ahead ; he must look to the right and to the left." *Winters v. Cable Co.*, 99 Mo. 509 ; *Kelly v. Railroad*, 95 Mo. 285 ; *Hilz v. Railroad*, 101 Mo. 36. " This is a continuing duty of an imperative character." *Kelly v. Railroad*, 95 Mo. 285, and cases therein cited.

BRACE, J.—In this action the plaintiff recovered judgment for $5,000 damages for the alleged negligent killing of her husband by one of defendant's trains. At the close of plaintiff's evidence the defendant demurred, and, its demurrer being overruled, the case

was submitted to the jury on that evidence, under the following instructions :

The court gave the following instruction at the request of the plaintiff: "The court instructs the jury that notwithstanding you may find from the evidence that the deceased, Charles Boyd, was guilty of negligence in attempting to cross the track of defendant at the place and time that he did, yet if you further find and believe from the evidence that the servants of the defendant, managing the train, saw Boyd in danger, or, by the exercise of reasonable care, prudence and watchfulness on their part, might have seen Boyd going into peril, under circumstances showing that he did not observe the near approach of the train, and the danger to which he was exposing himself, in time to have prevented the injury, by using all the means at their command to slacken the speed of the train, having due regard for its safety and the safety of the passengers, and they failed to do so, then plaintiff is entitled to recover, and you should find for her and assess her damages at the sum of $5,000."

The court gave the following instruction at the request of defendant: "The court instructs the jury that the deceased had no right to rely upon the customary speed of defendant's trains in passing through the town of Renick, or upon the fact that defendant's regular passenger train had been in the habit of stopping at a certain place, or upon the rules of defendant read in evidence, and in reliance upon such facts to attempt to cross in front of the train by which he was struck and killed."

The court gave the following instructions of its own motion: "The court instructs the jury that it was the duty of deceased to look and listen if he could see and hear the train, for the purpose of avoiding injury by it ; and, if at any time before he was struck he might have stopped his progress and avoided injury, then he was guilty of contributory negligence."

"The court instructs the jury, that if the servants of defendant in charge of its train saw deceased approaching the track, then they had the right to presume that he would not attempt to cross the track immediately in front of the train, and to proceed without abating the speed of the train upon such presumption, but if the defendant's servants managing the train saw, or might have seen by exercise of ordinary care, in time to have avoided the injury to deceased, that the deceased was running along heedlessly and without observing the approach of the train, and that he was about putting himself in front of the train through and by his own carelessness and heedlessness, then it was the duty of the said servants of the defendant to use every reasonable effort on their part to avoid the injury, and if they failed so to do under such circumstances, and the deceased, Boyd, was killed by reason thereof, the jury should find for the plaintiff."

The evidence for the plaintiff disclosed the following facts: Charles Boyd, the husband of plaintiff, was a hotel keeper in the town of Renick in Randolph county. His hotel was situated about one hundred feet north of the depot. The defendant's tracks are between the hotel and the depot. A plank walk leads from the hotel across the tracks to the platform of the depot, and was used as a public crossing. In the prosecution of his business, he was in the habit of going to the depot upon the incoming of all passenger trains stopping at that station. One of defendant's regular passenger trains, the mail from Kansas City to St. Louis, was due from the west at Renick daily at 12:30 P. M., and usually passed over the crossing from the hotel at a speed of three or four miles an hour, stopping at the platform just east of the crossing.

On the twenty-sixth of September, 1887, an excursion train approached Renick from the west on the time of the Kansas City and St. Louis mail, and running as its first section; it signaled its approach by

whistling at the usual place. The train from the time it whistled until it passed the depot, at which it did not stop, was running at about forty or forty-five miles an hour; as the train approached the depot its bell was rung, and kept ringing, but its speed was not checked. When Mr. Boyd heard the train whistling he was in the house; he immediately came out and started for the depot on the plank walk in a run or "trot," and without breaking his gait entered upon the track immediately in front of the engine and was struck just as he was about to make his last step over the track, and instantly killed. Mr. Boyd was a small, active man, quick in his movements, about fifty-two years of age, and in the enjoyment of all his senses.

The train was in plain view, and its sound in his hearing from the moment he started from his hotel, on the plank walk until he entered upon the track. That he both heard the train and saw it, in a general way, there is no question; but he did not stop a moment in his course to observe its movement, to ascertain whether it was the regular train he was expecting, and which would stop at the depot, and whose speed as it slowed up for that purpose he could accurately gauge from his long and frequent experience, or, as it proved to be, a special going at a high rate of speed and showing no evidence of an intention to stop; dominated perhaps by the first impression received in the house when he heard the whistle, that this was the regular mail, he hastened towards the depot and onto the track without stopping for a moment to test by sense of sight or sound the correctness of his first impression, and as the result of his heedlessness lost his life.

This is one view of the case presented by plaintiff's evidence, as through it we look back at the unfortunate accident after it happened; another may be taken of it, that observant of his surroundings he may have miscalculated his own speed and that of the train and hazarded the chance of getting across the track in safety before

the engine could strike him. In either view his death was the result of his own negligence.

The evidence for plaintiff further showed, that the deceased in going from his hotel to the track was in plain view of the defendant's servants on the locomotive, and there was evidence tending to prove ( upon the hypothesis that the train was going at the rate of forty miles an hour ) that, if the engineer had commenced checking his train at three hundred feet from the point of collision, the speed of the train could have been so diminished that it would have reached that point two seconds later than it did, and deceased would have escaped without injury.

On this state of the case the court refused defendant's instruction in the nature of a demurrer to the evidence; its instruction that there was no evidence in the case that defendant's servants operating the train saw, or could have seen, deceased upon the track in time to have stopped or checked the speed of the train so as to have avoided the collision, and gave the instructions set out. These instructions have been recited not for the purpose of comment, but for the reason that, upon their face, it appears how impossible it is to predicate a consistent theory of recovery upon the facts in the case under the well-settled principles of law they recognize.

It must be conceded that if defendant's liability in this case is to be limited, as in all similar cases heretofore it has been, to want of care on the part of its servants after they discovered, or by the exercise of reasonable care might have discovered, the deceased in a perilous situation, the plaintiff's evidence wholly failed to make out a case. *Moody v. Railroad*, 68 Mo. 470; *Zimmerman v. Railroad*, 71 Mo. 476; *Frick v. Railroad*, 75 Mo. 595; *Kelley v. Railroad*, 75 Mo. 138; *Rine v. Railroad*, 88 Mo. 392; *Yancey v. Railroad*, 93 Mo. 433; *Dunkman v. Railroad*, 95 Mo. 232; *Kelly v. Railroad*, 95 Mo. 279; *Guenther v. Railroad*, 95 Mo. 287; *Williams v. Railroad*, 96 Mo. 275; *Hilz v. Railroad*, 101 Mo. 36.

The deceased was in a perilous situation only when he stepped on the track, within the range of a passing train. He was going in a run or "trot." In the moment of time that elapsed between the first step he made on the track and the one he was about making off the track, it would seem a physical impossibility that defendant's servants could, by any means within their power, have done anything that would have avoided the collision. Of the fact that they could not, the plaintiff's evidence affords an arithmetical demonstration. The shortest distance at which it is assumed by plaintiff's counsel, that defendant's servants could have prevented the accident, was by commencing to check the train when the engine was three hundred feet from the point of collision; upon the hypothesis that the train was going forty miles an hour, or say sixty feet per second, the distance of three hundred feet was covered in five seconds. Now where was Mr. Boyd when the engine was five seconds from the point of contact? He could not have been going, according to the evidence, at a less rate of speed than four miles an hour or six feet per second, and being then five seconds, he was thirty feet distant from the point of contact, and at least twenty-three feet from a place of peril. By any possible process of legitimate reasoning upon the facts in evidence, the conclusion is inevitable, that defendant's servants could not have stopped or checked the train, after the deceased placed himself in a perilous situation, so as to have avoided the collision.

But it is contended that as the walk on which the deceased was pursuing his way to the depot was in plain view of defendant's engineer on the locomotive, and the deceased could have been seen upon it, in haste making his way toward the depot, the engineer ought to have commenced checking the speed of his train in time to have permitted the deceased to cross before it in safety. To this position the instructions given in this case furnish a full and complete answer in declarations of law

supported by all the authorities, "that it was the duty of deceased to look and listen if he could see or hear the train, for the purpose of avoiding injury by it, and, if at any time he might have stopped his progress and avoided injury, then he was guilty of contributory negligence;" and, "if the servants of defendant in charge of its train saw the deceased approaching the track, then they had the right to presume that he would not attempt to cross the track immediately in front of the train, and to proceed without abating the speed of the train."

If the instructions had stopped here the law of the case would have been properly declared on the evidence, which is equivalent to saying there was no evidence to take the case to the jury, and this must be so; for assuming that the engineer saw the deceased from the moment he left the hotel until he arrived within twenty or twenty-five feet of the track, when it was beyond the power of the engineer to control the speed of the train so as to avoid the collision, what could he have seen? Simply a man of mature age, of quick and active movements, in haste making his way to the depot, on the walk to the crossing, possibly in the rain, wearing a slouch hat, who could stop at any moment ; who could see and hear the train ; who apparently, and in fact, was in possession of all his mental faculties, and perfect master of his movements ; what could the engineer presume, but that such a man, like all other men, having due regard for their own safety, and governed by the ordinary instincts of human nature, would stop before he reached the point of peril patent before him? Into his mind he could not look and see what was passing there. But not until he actually entered upon the track and attempted to cross before the moving train, and when it was too late for the engineer to do anything to save him, was there anything disclosed in his manner or movement to lead to the conclusion that he would not act intelligently and rationally, and while yet at a safe distance from the

approaching train would not stop and permit the train to pass by before attempting to cross, if he found that he could not with safety do so before it.    Unless the doctrine of contributory negligence is to be entirely discarded, and engineers required to be such expert psychologists as to be able to read the minds of men, and know beforehand when a man in the possession of all his mental faculties is going to act in a way other than could be expected of an ordinarily prudent man, there was no evidence to take this case to the jury.

The judgment is reversed.    All concur, except BARCLAY, J., absent.