PAYNE, *Appellant*, v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY.

Division One, October 31, 1892.

1. **Nuisance:** OVERFLOWING LAND: DAMAGES. In an action for damages resulting from overflowing above a bridge, the evidence showed that below the bridge the water was caused to rise several feet by a dam across a natural watercourse; that above the bridge the water was two feet higher than below it. The trial court ruled that no recovery could be had on account of the dam, because the water was higher above than below the bridge. *Held*, error because, but for the dam the water below the bridge would have passed off and to some extent increased the flow under it, thus reducing the back water.

2. ————: ————: ————. Where a railroad company maintains a dam on its right of way over a watercourse which constitutes a nuisance, in causing the water to overflow adjoining land, it is liable therefor, although the dam was originally erected by the county, under legislative authority.

3. ————: LEGISLATIVE AUTHORITY. While that cannot be a nuisance, so as to give a common-law right of action, which the law authorizes, yet the legislative act must be a valid one.

Payne v. The Kansas City, St. J. & C. B. Ry. Co.

4. ———: ———: RIGHT OF ACTION. Acts done by virtue of a statutory enactment, which do not directly encroach upon the property of an individual or disturb him in its possession or enjoyment, will not entitle him to compensation or give him a right of action.

5. Municipality: GRADING STREET: SURFACE WATER. Where a city grades a street under charter authority and surface water is by reason thereof thrown upon adjacent property, the city is not liable for the injuries to the property-owner, if there is no negligence in the performance of the work.

6. ———: ———: TRESPASS ON PRIVATE PROPERTY. Where, however, in grading a street, the city builds an embankment beyond the limits of the street on private property, it is liable to the owner. (*Broadwell v. Kansas City*, 75 Mo. 213.)

7. ———: SURFACE WATER. So the city is also liable where, in the improvements of its streets, it collects surface water by means of ditches and then precipitates it off in a body on private property, where it was not accustomed to flow. (*Rychlicki v. City of St. Louis*, 98 Mo. 497.)

8. Constitution: TAKING PRIVATE PROPERTY: DAM: OVERFLOWING LAND. Pursuant to legislative authority, a dam was constructed by the county, as a public improvement, across the old bed of a stream after the waters had been diverted by natural causes to a new channel. Subsequently, the new channel becoming filled from natural causes and the dam preventing the water from running off in the old channel, plaintiff's land was overflowed and injured. *Held*, that maintaining the dam was not a taking of plaintiff's land within the provision of the constitution that private property should not be taken or appropriated to public use without just compensation.

9. Railroad: CULVERT: WATERWAY. Where a railroad company builds a culvert or other passageway under its roadbed, it must keep the same open for the free transit of water.

10. Practice: INSTRUCTIONS. Where instructions, as given, cover the entire subject, there is no error in refusing other instructions on the same subject, even though correct.

*Appeal from Holt Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*T. C. Wood* and *M. McKillop* for appellant.

(1) The court erred in refusing to give instruction number 11 asked by plaintiff. There was abundance of evidence that said company had become the successor in the ownership and control of said railroad from and after the year 1870, and had kept up, maintained and repaired said dam. *Brown v. Railroad*, 12 N. Y. Ct. App. 486; *Pinney v. Berry*, 61 Mo. 359; *Dickson v. Railroad*, 71 Mo. 575; *Wayland v. Railroad*, 75 Mo. 549. (2) The court erred in refusing to give instruction number 13 as asked by plaintiff. *Pumpley v. Green Bay Co.*, 13 Wall. 166; *Sinnickson v. Johnson*, 2 Harr. (N. J.) 129; *Gardiner v. Newburg*, 2 Johns. Ch. 162; Angell on Watercourses, sec. 465*a*; *Hooker v. N. H. & H. Co.*, 14 Conn. 146; *Rowe v. Bridge Co.*, 21 Pick. 344; *Stevens v. Canal*, 12 Mass. 466. And the existence of the power to so take private property may be raised at any stage of the proceedings. *City of Hopkins v. Railroad*, 79 Mo. 98. (3) The court erred in refusing to give instruction number 14 prayed for by plaintiff. *Givens v. Van Studdiford*, 4 Mo. App. 498; s. c., 72 Mo. 129. (4) The court erred in refusing to give instruction number 15 on the measure of damages prayed for by plaintiff. *Pinney v. Berry*, 61 Mo. 359; *Givens v. Van Studdiford*, 86 Mo. 149; Dillon on Municipal Corporations [3 Ed.] note 1 to sec. 1038; *Chicago v. Huenebrein*, 85 Ill. 594. (5) The court erred in refusing instructions numbers 3 and 7 as asked for by plaintiff. (6) The court erred in giving instruction number 1 prayed for by defendant. (7) The court erred in giving instructions numbers 2, 3, 4, 5 and 6, prayed for by defendant. *McCowan v. Railroad*, 23 Mo. App. 203; Wood on Nuisances [2 Ed.] sec. 865; *Van Hoozier v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo.

575; *Culver v. Railroad*, 38 Mo. App. 130. (8) The court erred in giving instruction number 7, asked for by defendant. *Rychlicki v. St. Louis*, 98 Mo. 497.

*Spencer, Burnes & Mosman* for respondent.

(1) The court did not err in refusing plaintiff's eleventh, thirteenth and fourteenth instructions, or in modifying plaintiff's third and seventh instructions, or in giving defendant's first, second, third, fourth, fifth and sixth instructions. "The grant of the right to build the dam is clear and certain, and this grant carries with it all the incidental rights and powers which were requisite to the efficacious and beneficial exercise and enjoyment of the right." *Slatten v. Railroad*, 29 Iowa, 152; *Miller v. New York*, 109 U. S. 385; *Trans. Co. v. Chicago*, 99 U. S. 640; *Bellinger v. Railroad*, 23 N. Y. 47; *Radcliff's Ex'rs v. Mayor*, 4 N. Y. 203; *Boothby v. Railroad*, 51 Me. 318; *Abbott v. Railroad*, 81 Mo. 271. "It is a logical sequence from legal principles that to the extent to which a person has a right to act others are bound to suffer; and any damage that may accrue to them, while a person thus exercises his own rights, affords no valid ground of complaint. The loss occasioned in such cases is *dammum absque injuria*." *Charles v. Rankin*, 22 Mo. 572. "This, it seems to us, is sound doctrine, and, indeed, it must be true, as a general proposition, that the rightful and *bona fide* exercise of a lawful power or authority cannot afford a basis for an action." *Slatten case, supra; Randall v. Railroad*, 65 Mo. 332; *Henry v. Pittsburg Bridge*, 8 Watts & S. 85. It was the settled rule in this state, prior to the adoption of the constitution of 1875, that consequential damages could not be recovered. Indeed, to change that rule, the constitution was amended by the insertion of the words

"or damaged." *Werth v. Springfield*, 78 Mo. 110; *Household v. St. Louis*, 83 Mo. 492; *Rude v. City*, 93 Mo. 416; *Sheehy v. Cable Co.*, 94 Mo. 578; *State ex rel. v. City*, 89 Mo. 43. This court applied the doctrine in relation to the recovery of consequential damages, above stated, at an early day to cases in which damages were sought to be recovered on account of injuries sustained from water thrown upon the lands of the citizens by a public work, and in every case it has held that consequential damages, resulting from the flooding of premises with water, could not be recovered. *City v. Gurno*, 12 Mo. 414; *Imler v. City*, 55 Mo. 119; *Swenson v. City*, 69 Mo. 166; *Foster v. City*, 71 Mo. 157. In the following cases this court applied the same rule to consequential damages from water, in cases where a railway was a party: *Abbott v. Railroad*, 83 Mo. 276; *Swenson v. Railroad*, 69 Mo. 166; *Jones v. Railroad*, 84 Mo. 155; *Clark v. Railroad*, 36 Mo. 224. (2) *First.* The act of the legislature authorized the construction of a permanent dam, and, where the structure causing damage is a bridge, pier, railway embankment, or similar public work of a permanent nature, the damage is done once for all. The action accrues when the work is completed, and a recovery can be had in one action for all damages, present and prospective. *Stogdill v. Railroad*, 53 Iowa, 43; *Fowle v. Railroad*, 112 Mass. 337; *Railroad v. Mihlman*, 17 Kan. 234; *Loeb v. Railroad*, 118 Ill. 208; *Mahar v. Railroad*, 91 Ill. 312; *Troy v. Railroad*, 3 Foster (N. H.) 83; *James v. City*, 83 Mo. 567. *Second.* Again, an insuperable objection to the application of the doctrine of the *Pinney case* to the one at bar is, that even if the construction of the dam was without authority the county of Atchison had by prescription acquired the right to have it maintained before the damages mentioned in the petition accrued to plaintiff. *Sherber v. Held*, 47 Wis. 340;

*State v. Well,* 67 Mo. 637; Angell on Limitations, sec. 300; *McGowan v. Railroad,* 23 Mo. App. 208; *James v. City,* 83 Mo. 567; *Smith v. Musgrove,* 32 Mo. App. 255. *Third.* The dam was built in 1868. The damages accrued in 1881, 1882 and 1883. The action was brought April 7, 1885. It is, therefore, clear that the statute of limitations, that is pleaded to each count, was a complete bar to the action. Plaintiff in his petition alleges that the dam flooded his lands from year to year. *Baldwin v. Gas Co.,* 57 Iowa, 51; *Powers case,* 45 Iowa, 651. (3) Plaintiff's fourteenth instruction was rightly refused, because it declared that defendant was liable for damages caused by independent tort feasors. *Givens v. Van Studdiford,* 86 Mo. 149; *Martinowsky v. City,* 35 Mo. App. 70.

BLACK, J.—This is an action to recover damages for overflowing some four thousand acres of land owned by plaintiff, thereby destroying his crops in the years 1881, 1882 and 1883, and at the same time permanently injuring his lands. There is a separate count for the damages to the crops in each year, and for the permanent injuries to the land.

The petition avers and the proof shows that the acts complained of were done at different dates and by different railroad companies; but as these companies were consolidated from time to time, forming the present defendant, we shall treat the defendant as liable for the acts of its constituents. Disregarding these acts of consolidation the substantial averments of the petition are, that the defendant in 1868 built a dam across the Nishnabotna river at one point, and in 1880 carelessly and negligently constructed a bridge over the same river at another point, by reason of all which the waters of that river were thrown back upon the plaintiff's land at ordinary high stages of water and

his crops and land injured in the years before named. The jury found a verdict for the plaintiff, but assessed his damages at $1 only, and he appealed from the judgment entered thereon.

The bridge and dam are in the county of Atchison in this state, the former a mile and one-half and the latter two miles south of the state line. The plaintiff's lands lie in the adjoining county of Fremont in the state of Iowa, and are from five to twelve miles north and northwest of the dam and bridge. The railroad runs over the bottom lands on the east side of the Missouri river. It passes over the dam and bridge and thence on in a northwest direction for a distance of four miles to a point near to, but west of, Hamburg in Iowa, thence in a more westerly direction for some three miles where there is trestle work over a slough, and thence on to the northwest. The plaintiff's lands are situate on both sides of the railroad, north and south of this slough. The Nishnabotna river, hereafter called the Nishna, flows from the interior of Iowa in a southwesterly direction to a point just east of Hamburg, thence in a more southerly course to the bridge. Willow creek flows in a southeasterly direction, east of the railroad, to a point near Hamburg where it empties into the Nishna, so that the waters of these streams join before they reach the bridge. Prior to 1860 the Nishna, after passing the place where the bridge was subsequently erected, made a curve to the south and then back to the east, passing over the place where the dam was built, thus forming a loop out west towards the Missouri river. It then ran on in a southeasterly direction for a distance of fifty or sixty miles by its meanderings before it entered the Missouri. In 1863, according to most of the witnesses, the Missouri worked its way east so as to cut into the Nishna at the loop before mentioned. Thereafter the Nishna discharged

its waters into the Missouri at this cut-off, leaving the fifty or sixty miles of the old Nishna bed as a wasteway in time of high waters.

In 1867 the Missouri made what is called the Peru cut-off, that is to say, it cut out for itself a new channel some five miles west of this place where it had before cut into the Nishna at the loop. After this the Nishna continued to flow down through this old Missouri river channel for a distance of some five miles to the Missouri. In times of usual high waters, either in the Nishna or Missouri, some of the overflow waters passed down the old Nishna channel, but at low water the inlet to that channel was dry land. With this state of affairs the railroad was constructed in 1868 along the east side of the old Missouri river channel through which the Nishna waters then flowed. The dam was made, not across this channel, but across the old Nishna bed, and a bridge was built across the Nishna a half mile to the north where the railroad crossed the river.

There is a question of fact as to whether the fill or dam was made by the railroad company or by the county of Atchison. The evidence on this issue is in substance this: Some of the plaintiff's witnesses speak of the fill as having been made by the railroad contractors. On the other hand the defendant put in evidence an act of the legislature, approved the nineteenth of March, 1868, the first section of which is in these words:

"That the county court of Atchison county be and is hereby authorized to build, or cause to be built, a dam across the Nishnabotna river in said county, at or near the point where the line of the Council Bluffs & St. Joseph railroad crosses said river below a point in said river heretofore known as 'the narrows.'"

Second section authorizes the county court to pay for the work and for keeping it in repair out of the county road fund. The defendant also read in evidence a contract between the county judges and Phelps & Co. for building the dam, but the contract is not in the present record. One witness says that in constructing the railroad an opening was left at this place for a bridge, that Phelps & Co. filled it up, that his understanding was that the county was to pay for the work, but he cannot say who paid for it. The proof shows that defendant procured the right of way where the dam was made by a deed from the land-owner, and has at all times kept the dam or fill in repair and operated its road over the same.

After the dam had been completed the old Missouri channel, through which the bulk of the Nishna waters flowed, began to fill up, so that in time the low water line of the Nishna became higher and higher, and in 1879 or 1880 the overflows of that river threatened injury. In view of this fact the county of Atchison built a dyke in 1880 from the south end of the railroad bridge east to the bluffs.

Though there is some conflict in the evidence, the weight of it seems to be that the plaintiff's lands were overflowed in 1880 by high waters from the Missouri. One witness says the Missouri extended from the bluffs on the Nebraska side to the bluffs on the Missouri side. As to the years 1882 and 1883 the evidence tends to show that the Missouri river was high, and that the Nishna was at the same time higher than it had ever before been known to rise. The waters from the Nishna were several feet deep all over the lands between the dyke on the south, the railroad embankment on the west, and the bluffs back of Hamburg on the east. They backed up Willow creek and ran out at the slough and trestle work before mentioned, and destroyed the plaintiff's

crops and injured his lands. During the time of these floods the water ran under the bridge, some of the witnesses say, like a mill race. It was higher by one, two or three feet above than below the bridge.

The present railroad bridge was built, as we understand, after the road had been in operation, but prior to the flood of 1881. There is some evidence tending to show that it is not long enough to accommodate a free passage of the water at high stages, and that some obstructions were left in the channel. The defendant's evidence tends to show that these alleged obstructions were below low water line when the bridge was built, that the bridge consisted of two spans one hundred feet each, while the river just above was only one hundred and twenty five feet between its banks at the widest place, that the bridge was long enough for all ordinary high stages of water, and that its failure to discharge the waters at the time in question was due to unprecedented high waters in the Nishna, the Atchison county dyke, and the filling up of the old Missouri channel from natural causes.

1. The trial court not only refused all of the instructions asked by the plaintiff on the issues relating to the dam, but, at the request of the defendant, gave one to the effect that the plaintiff could only recover for damages sustained by reason of the obstructions in the river at the bridge; thus holding that on the pleadings and evidence the plaintiff could not recover any damages because of the dam. In short the court sustained a demurrer to the evidence as to this branch of the case. In support of this ruling it is argued that the dam could not have aided in backing up the water above the bridge, because the evidence shows that the water ran under the bridge during these overflows. This line of argument will not stand the test. Let it be conceded that the water stood two feet

higher just above than just below the bridge.   It would.
then follow that a body of water two by two hundred.
feet flowed under it.   But it must be remembered that.
the water was nearly up to the chords of the bridge, and.
that it stood several feet deep all over the land just.
below the bridge.   But for the dam some of this back.
water below the bridge would have passed off through.
the old Nishna bed, and thus to some extent increased.
the flow under the bridge, and as a consequence relieved.
the back water above it.

2.   It is next urged that the defendant is not
liable because the dam was built by the county of
Atchison, and not by defendant.   Though the dam
was built, or caused to be built, by the county under the
act of the legislature before mentioned, there is evi-
dence tending to show that it was built on defendant's.
right of way, with its knowledge and consent; and the
proof is clear that it has at all times used and kept the
dam in repair.   If these are the facts, and we must
assume that they are for all purposes of a demurrer
to the evidence, the defendant is in no better position
than the county.   If the dam amounts to a nuisance,
then, under these facts, the defendant is liable as for
maintaining the nuisance.

3.   The legislature authorized the construction of
the dam for the purpose of protecting the lands along
the old Nishna bed from overflows, and the dam had
that effect.   It was a public improvement, and must.
be so treated.   Gould on Waters [2 Ed.] sec. 241.
The dam, being a public improvement, the defendant
insists that the act of the legislature constitutes a com-
plete justification, and that the plaintiff has no remedy
for any injuries which he may have sustained.   On
the other hand, the plaintiff insists that the act and.
work done thereunder amount to a taking of his prop-

erty for public use without compensation, and for this reason the act is void.

That cannot be a nuisance so as to give a common-law right of action, which the law authorizes. To the extent which a person has a right to act, others must suffer. These propositions have been laid down by high authority, and are not questioned; but they are based upon the assumption that the act of the legislature which authorizes the thing to be done is a valid law. If it violates the constitution it is not a valid law, and of course constitutes no justification for the acts done thereunder.

The act of the legislature in question is to be tested, not by the present constitution, but by the provision in force when the act was passed, which provided that private property ought not to be taken or appropriated to public use without just compensation. This act does not provide for the payment of damages to persons whose property may be injured by the dam, and the question is whether the act and work done thereunder amount to a "taking" within the meaning of the constitution.

The books are full of cases which show that many acts done under legislative sanction, which are injurious to others, do not amount to a taking of private property; and this, too, though the same acts would be actionable at the suit of the persons injured, if not done under legislative authority. It is generally held that acts done by virtue of statute law, which do not directly encroach upon the property of an individual or disturb him in his possession or enjoyment, will not entitle him to compensation, or give him a right of action. Cooley's Constitutional Limitations [6 Ed.] 666; *Trans. Co. v. Chicago*, 99 U. S. 635; *Bellinger v. Railroad*, 23 N. Y. 42. Where a city grades a street under

charter authority and surface water is, by reason thereof, thrown upon adjacent property, the city is not liable for the injuries suffered by the property-owner, there being no negligence in doing the work. *City of St. Louis v. Gurno*, 12 Mo. 417; *Imler v. City*, 55 Mo. 119; *Foster v. City of St. Louis*, 71 Mo. 157. But, if, in grading a street, the city builds an embankment beyond the limits of the street on private property, then it is liable. *Broadwell v. City of Kansas*, 75 Mo. 213; *Vanderlip v. City*, 73 Mich. 522. The same is true where a city, in the improvement of its streets, collects surface water by means of ditches, and then casts it off in a body on private property where it was not accustomed to flow. *Rychlicki v. City of St. Louis*, 98 Mo. 497.

We now notice some of the cases mostly relied upon by the plaintiff: In *Eaton v. Railroad*, 51 N. H. 504, the plaintiff owned meadow land which was protected from the overflows of a river by a ridge of land. The defendant, in constructing its road, made a cut through the ridge. The waters of the river flowed through this cut in ordinary freshets on and over the meadow. The court held the defendant liable in an action on the case. The principle of liability, it was said, must be the same whether the owner is wholly or only partially deprived of the use of his land; that taking a part is as much forbidden as taking the whole; that the quantum of interest may vary, but the principle remains the same. It is also there said that to turn a stream of water on the plaintiff's premises is as much an infringement of his property rights as it would be for one to go upon the premises in person and dig a ditch, or deposit upon them a mound of earth.

In *McKenzie v. Boom Co.*, 29 Minn. 288, defendant erected a boom across a navigable stream in accord-

ance with legislative authority. The boom was so constructed as to overflow plaintiff's land once or twice in a period of seven or eight years. It was held that this was as much a taking as it would be if a like effect occurred every year. And in *Pumpley v. Green Bay Co.*, 13 Wall. 174, a dam had been erected, pursuant to legislative approval, across a river which was an outlet to a lake, and the waters of the lake were thereby raised so as to overflow the plaintiff's land from the completion of the dam to the commencement of the suit. The defendant was held liable for the damages, the court stating in substance that where real estate is actually invaded by superinduced additions of water, earth and sand, so as to effectually destroy or impair its usefulness, it is a taking within the meaning of a constitutional provision like the one now in question. Justice MILLER says in that case that many of the decisions holding that the property-owner has no remedy for consequential injuries arising from the prosecution of public improvements, such as roads, streets, rivers and other highways, have gone to the utmost extent, and some of them beyond correct judicial constructions. The principle, he says, is a sound one when properly applied. The same court in the subsequent case of *Trans. Co. v. Chicago*, 99 U. S. 635, speaking through Justice STRONG, says: "But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him a right of action." He also says the extremest qualification of this doctrine is to be found perhaps, in the *Pumpley–Green Bay Co. case*, and in the New Hampshire case before mentioned.

Though there is a conflict in the authorities as to what will constitute a taking in these overflow cases, still this conflict will not be so great if we keep in mind the particular facts of each case, rather than the line of argument sometimes pursued. It is clear that to constitute a taking it is not necessary that the land should be absolutely appropriated, nor is it necessary that the owner be permanently deprived of the use of it. It is enough to constitute a taking that the use of the land is at times seriously and directly interrupted by the public improvement.

Looking at the mass of evidence, the substance of which has been stated, it will be seen that the Nishna river had two channels from a point just below the railroad bridge. The old Missouri channel constituted the main and principal one, down which water flowed at all times. The old Nishna bed, branching off to the east, constituted the other one. It served as a waste-way during high waters, but had defined banks into which the water collected and ran off, so that it must be treated as a stream. The dam across this waste-way left the main channel untouched. That channel was a good and sufficient outlet at all ordinary high stages of water and continued to be such for a period of ten or more years. In process of time it filled up from natural causes, thereby obstructing the passage of the water from above. If the dam can be said to have had any real agency in producing the damages complained of, it was because of its presence after this process of filling up had taken place. The dam was rather a condition than the real and direct cause of the injury. It was the intervening filling up of the main channel from natural causes which caused the dam to aid in the overflows of 1881, 1882 and 1883. We do not see how such injuries can be said to proceed immediately from the dam. The

damages shown are too consequential, if not remote, to support this action.

We have found and been cited to no case, the facts of which will say that there was here a taking of private property for public use. The facts as they existed when and immediately after the dam was constructed would have laid no foundation whatever for the allowance of damages had the act provided for paying damages to all persons who might be injured by the dam. Nor does the evidence in this case lay the foundation for an action for the maintenance of a nuisance, unless it was the duty of the defendant to keep the main natural channel open and free of obstructions. Where a railroad builds a culvert or other passage way under its road, it is bound to keep the same open for the free passage of water (36 N. Y. 214), but that is not the case here. Here there was a good and sufficient natural channel, not touched by the dam, and this being so the state had a right to authorize the county to fill up the old one. The damages sued for were caused by one of those changes which take place in the channel of the Missouri river and its tributaries, which are to be laid to the account of Providence and not to the hand of man. The court did not err in its rulings on this branch of the case.

4. The court submitted that part of the case which relates to the negligent construction of the bridge on the exact theory defined in the plaintiff's instructions. Some of these instructions asked by the plaintiff were modified, it is true, but they were only modified so far as they alluded to the dam as a ground of recovery. It follows from what has been said that there was no error in these modifications. In other respects the instructions were given as asked.

The plaintiff's ninth instruction defined the measure of damages as to the fourth count, and his tenth

defined the measure of damages as to the first, second and third counts. Those two instructions covered the entire subject, and there was, therefore, no error in refusing the fifteenth instruction relating to the same subject even if correct.

The verdict for $1 may be accounted for on the ground that the jury believed the bridge was wide enough for all ordinary high stages of water, but that there was some little negligence in failing to properly clean out the channel under it when constructed but that these obstructions had very little to do with the overflows. There is an abundance of evidence, to support such a finding. We discover no error in the record and the judgment is affirmed. All concur.