J. F. CONRAD GROCER COMPANY, Repondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, May 7, 1901.

1. **Negligence:** CONTRIBUTORY NEGLIGENCE. Where one drives incautiously upon a street railway track, without taking care to look and listen to ascertain whether a car is approaching, such negligence will preclude a recovery for injuries sustained by collision with cars or trains running on same track.

2. ———: ———: STATUTORY REQUIREMENT TO SOUND ALARM AT CROSSING. And that, too, where the street railway company was required by statute to sound an alarm whenever cars approached crossings, though the requirement·was not observed.

3. ———: ———: ORDINANCES, OBSERVANCE OF: PRESUMPTION. A city ordinance, exacting vigilance of employees in charge of cars to discover any peril which might threaten vehicles or individuals, is not presumed to be disregarded, and proof must be furnished before defendant can be held liable for its violation.

4. ———: PLEADINGS IN ACTION FOR NEGLIGENCE. A recovery can only be permitted upon proof of the grounds specified in the petition, and not on any other acts of negligence.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

Reversed.

*McKeighan, Barclay & Watts* and *Robert A. Holland, Jr.,* for appellant.

(1)  The court erred in overruling the peremptory in-

Conrad Grocer Co. v. Railroad.

struction offered by defendant and in submitting the case to the jury. The evidence of plaintiff showed clearly that the driver in charge of plaintiff's wagon was guilty of contributory negligence in driving on to defendant's tracks immediately in front of an approaching car. Weaver v. Railroad, 60 Mo. App. 207; Fusili v. Railroad, 45 Mo. App. 535; Payne v. Railroad, 136 Mo. 562. The court erred in refusing defendant's instruction "D," to the effect that the defendant was not liable if, after the wagon in question could have been discovered near the track, the motorman used ordinary care to stop the car, even though the car at the time may have been running at the highest rate of speed mentioned by any witness. Sullivan v. Railroad, 117 Mo. 214. (2) The court erred in giving instructions numbered 1 and 3 at the request of plaintiff. Said instructions required defendant's mortorman to stop the car in the shortest time and space possible. The law does not impose any such absolute duty upon defendant; its sole duty is to use ordinary care to stop a car after it sees a person or vehicle in a position of danger, or would, by the exercise of ordinary care, see such vehicle or person.

*Lubke & Muench* for respondent.

(1). A contract between defendant and the city of St. Louis, binding defendant to observe all ordinances of the city, regulating street railways, was clearly established. Thereby defendant agreed that every person in charge of one of its cars should "keep a vigilant watch" for all vehicles either on the track, or moving towards it, and "on the first appearance of danger" to such vehicle, should stop such car "in the shortest time and space possible." This contract binds defendant to an exact obedience. Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 108 Mo. 1. c. 152; Jackson v. Railroad, 58 S. W.

32; Schmidt v. Railroad, 149 Mo. l. c. 284-288.    (2)    It is still the law of this State that even a trespasser upon a railroad track is protected against willful or reckless injury on the part of those in charge of moving cars.    Morgan v. Railroad, 60 S .W. 195; and cases cited and discussed in the majority opinion.    (3)    *A fortiori,* should this be the rule as to a street railway, where it crosses much-traveled streets, and its privilege to do so is procured upon the express covenant to use not merely ordinary care, but extraordinary care.

GOODE, J.—On the third day of November, 1899, a repair car running eastward on the defendant's track collided with the plaintiff's horse and wagon at the intersection of the track and Whittier street.    That street runs north and south and the right of way east and west.    The track is straight for several blocks west of Whittier, and the view unobstructed. The accident occurred near six o'clock in the evening.    The day was gloomy and at that hour it was growing dusk.    The driver of the wagon, who was a youth seventeen or eighteen years of age, was proceeding southward on Whittier street as the car which collided with him approached from the west.

The evidence tends to show that just as the horse got on the south-bound track, the car struck him and the fore part of the wagon, smashing the latter in pieces, damaging the harness and crippling the horse so badly that he had to be killed.    The boy fell under the front wheels of the car, which pushed him along to a point behind the east side of the second lot east of Whittier street.    There was some slight discrepancy in the testimony as to the width of these lots, which must be, we gather, about thirty feet each.    The plaintiff's vice-president or manager so testified.    When the car stopped, the front wheels were over the boy's body and he was dead.    The evidence is conflicting as to whether the gong was sounded as

the car approached the crossing and as to what lights were visible on it. The witnesses for the plaintiff, who speak as to those matters, say that the gong was not rung and that the only light was a red bulb light near the top of the car and in front. The defendant's witnesses, on the contrary, swear that the gong was repeatedly rung, that there was a burnished head-light on the hood and a coaloil lamp on the dash.

The petition pleads the ordinance requiring operatives on street cars to keep a vigilant watch for vehicles and persons in front, who may be on the track or moving towards it, and stop the car in the shortest time and space possible on the first appearance of danger to them. The allegations may be analyzed into these specifications of negligence; that the motorman and conductor on the car which struck the plaintiff's horse and wagon failed to keep a vigilant watch for vehicles and did not stop the car in the shortest time and space possible on the first appearance of danger to the plaintiff's horse and vehicle; but instead of doing so, after they knew or could have known, had they exercised reasonable diligence, that the wagon and horse were on the public street, about to cross the track and in danger of being struck by the car unless it was slackened or stopped, carelessly and recklessly propelled the car forward with great and unusual speed, without giving the driver any warning or a reasonable opportunity to avoid a collision.

The present action is to recover damages for the loss of the horse, wagon and harness. The answer was a general denial followed by a plea of contributory negligence, which alleged that the driver negligently drove towards and on the defendant's track without looking and listening to see if a car was approaching—drove immediately in front of one which was approaching, thereby causing the collision.

Several errors are assigned which we will not take up, because, in our opinion, a direction should have been given

to the jury to return a verdict in favor of the defendant.

The witnesses introduced by plaintiff conclusively establish the fact that the driver must have both seen and heard the car if he had endeavored to do so, before driving on the track. He was an experienced hand, having been employed in that service by the plaintiff for a year or two, during which time he drove every day about the city delivering orders. Annie Pearson, who was one of the witnesses for plaintiff, testified that she was at the rear of the second residence lot east of Whittier, which fronted on West Belle Place, and outside the fence, on defendant's right of way: she was emptying slops. She saw this car at Pendleton avenue, which is a block west of Whittier street, and was four or five hundred feet from her. She kept her eye on the car continuously until it reached Whittier street and could see it plainly all the time. She testified, likewise, that she could have seen it had she been on the crossing at the intersection of Whittier street and the right of way. She did not see the horse and wagon until the car struck them. This witness said she did not see the motorman at all and could not tell whether he tried to stop the car in time or not.

Mary E. Cunningham testified that she was in a second-story rear room of the house in which Annie Pearson was employed. She heard the noise of the approaching car, she supposed, about three hundred feet or more west of Whittier street, and that the rear end of the lot was about fifty feet from the room she was in. She said further, that one standing at Whittier street could see and hear the cars a block or more off.

William Woodell was driving south to Whittier street and when the collision occurred, was crossing Belle. He saw the wagon just as it went down. He was able to see the collision from where he was. He thought the car was stopped about one hundred feet east of the crossing; it was getting dusk.

He first saw the car when it struck the wagon. The horse was struck just as it got on the track. It was done so quickly, he said, "one would not have time to look around." The witness also said that a person standing on the corner of Whittier and the right of way looking west, could see a car for two or three blocks off, he thought; could see it clear to Taylor avenue, about six blocks away; that the distance it could be seen would depend upon the amount of daylight and the light on the car.

Charles H. Burton, also called for plaintiff, swore that he lived on the south side of West Belle, the second house west of Whittier. He was standing on his front porch at the time and heard the rumbling of the car.

The foregoing is the substance of the testimony for the plaintiff, aside from the proof about the value of the property which was destroyed. The motorman testified they were running at a speed of ten or twelve miles an hour; that he sounded the gong all the way to Whittier street from about half way to that and Pendleton. He first saw the horse when it came within the rays of the headlight, the car being then ten or fifteen feet west of Whittier street. He at once threw off the power, took up the slack in the brake and did all he could to stop. He further swore that the car could not have been stopped within less than one hundred feet, and that he stopped about sixty feet east of Whittier. H. O. Rockwell, an electrical engineer in the defendant's employ, testified the car could not be stopped under one hundred or one hundred and ten feet at the speed it was running.

A careful sifting of the evidence has yielded nothing from which the inference of culpable negligence on the part of the defendant's employees can be deduced. The deplorable casualty seems to have been unquestionably due to the act of the unfortunate boy in driving incautiously on the track without taking care to look and listen to ascertain whether a

car was approaching. It is impossible to doubt that he could have both seen and heard the car in ample time to shun it if he had paid attention. The testimony of plaintiff's own witnesses conclusively establishes that fact. It is manifest that the driver advanced on the tracks, which themselves were a signal of danger, without pausing or checking his horse—drove unconsciously to his death. Such fatalities are probably to be attributed to those transient reveries and lapses of attention to external events which come over persons now and then in the midst of busy scenes, and render them for awhile oblivious of their surroundings. Whatever the cause may be, such negligent omissions have been held to preclude a recovery for injuries sustained by collisions with cars or trains in innumerable instances. Boyd v. Ry., 105 Mo. 371. And that, too, where the railway company was required by statute to sound an alarm whenever trains approached crossings, though the requirement was not observed. Henze v. Ry. Co., 71 Mo. 636; Weller v. Ry. Co., 120 Mo. 635. The same duty is imposed on persons approaching street railways. Sonnenfield's Millinery Co. v. People's Ry. Co., 59 Mo. App. 668; Smith v. Citizen's Ry. Co., 52 Mo. App. 36; Hickman v. Union Depot Ry. Co., 47 Mo. App. 65. The testimony of the witnesses, as well as the circumstances themselves, drive home the conviction that the boy was bound to see and hear the car, which killed him, and demolished his employer's property, before he drove in front of it, if he had noticed. No one pretends the view was obstructed or the car's movement inaudible. The plaintiff's witnesses testified to hearing its noisy rumble very distinctly as it moved east from Pendleton avenue. All conceivable inferences and theories are excluded by positive testimony, save that of the driver's heedlessness, which must be imputed to his employer and redress denied it. Lynch v. Metropolitan Ry. Co., 112 Mo. 420; Bunyan v. Citizen's Ry. Co.,

Conrad Grocer Co. v. Railroad.

127 Mo. 12; Watson v. Mound City Ry. Co., 133 Mo. 246; Payne v. C. & A. R. R. Co., 136 Mo. 562; Kelsay v. Mo. Pac. Ry., 129 Mo. 362; Hixon v. St. L. H. & K. Ry. Co., 80 Mo. 335; Stepp v. C. R. I. & Pac. Ry., 85 Mo. 229; Holwerson v. St. L. & S. Ry. Co., 57 S. W. Rep. 770. But leaving out of view the clear negligence of the plaintiff's servant proximately causing the accident, what substantial evidence is there tending to establish the assignments of negligence preferred against the defendant and predicated in the instructions requested by the plaintiff. Taking them in order, the first is that the city ordinance exacting vigilance of employees in charge of cars to discover any peril which might threaten vehicles or individuals, was disregarded. This can not be presumed, and there is no evidence to prove it, but proof must be furnished by the plaintiff if it is to succeed. Murray v. Mo. Pac. Ry. Co., 101 Mo. 236; O'Malley v. Mo. Pac. Ry., 113 Mo. 319. None of the plaintiff's witnesses saw the motorman until the instant of the collision or afterwards. He testified himself that he was watching but did not see the horse and wagon until within ten or fifteen feet of the crossing. The surroundings corroborate rather than contradict him; for there is proof that residences and inclosures stand on either side of Whittier street, which shut off the view to the north. We find no evidence which would justly authorize the inference that this employee was lacking in vigilance, or that there was any reasonable precaution he could have taken to inform himself sooner of the danger of running against the horse and wagon.

This goes far towards rebutting the other negligent act charged; that he did not stop the car in the shortest possible time. It may be remarked in passing that we think the objection made to that requirement of the ordinance is unfounded. Fath v. Tower Grove & L. Ry. Co., 105 Mo. 537; Schmidt v. Ry. Co., 149 Mo. 284. As has been said, the

Conrad Grocer Co. v. Railroad.

plaintiff's witnesses did not see the motorneer and, hence, we are unable to say what steps he took to avoid an injury to the plaintiff's driver and property, after he knew they were in danger.   He swore he did everything possible, while others as well as himself, testify that the car could not have been stopped after the horse and wagon came into sight in time to escape colliding with them.   They were about the middle of Whittier street and he saw them fifteen feet west of it at the furthest. There is neither statement nor circumstance tending to show the car could have been stopped in that distance.   The un-contradicted evidence is that one hundred or one hundred and ten feet were needed at least.   Respondent argues that the speed might have been slackened so that the wagon would have had time to pass over safely.   Besides all the testimony on the sub-ject being that every effort was made to stop, which must of course have lowered the speed, this contention is refuted by the fact that the plaintiff's witnesses swear the horse was hit as soon as he got on the track.

There was conflicting testimony concerning the speed at which the car was running, but neither allegation nor proof that the speed was unlawful.   It was alleged merely to be great 'and unusual.   So there was much controversy over the question whether a headlight was on the front, but the petition does not count on negligence in that respect and while testimony about it may have been properly admitted in the progress of the inquiry, a recovery could only be permitted on the grounds specified.   Waldhier v. Ry. Co., 71 Mo. 514; Bunyan v. Cit-izen's Ry. Co., 112 Mo. 12; McManamee v. Mo. Pac. Ry. Co., 135 Mo. 440.

The humane rule is invoked by the respondent.   That rule is upheld by us to the full extent it has been declared by the Supreme Court.   Hutchinson v. St. Louis & Meramec Ry. Co., 161 Mo. 246.   But it is wholly inapplicable to the facts

in this case. There is no proof that every humane instinct was not obeyed by the defendant's servant in order to avert the calamity which befell the plaintiff's employee and property. The case can not be distinguished in principle from several in which a recovery has been refused and in which the application of that doctrine was denied. Boyd v. Ry. Co., 105 Mo. 371; Watson v. Mound City Ry. Co., 133 Mo. 246; Payne v. C. & A. Ry. Co., 136 Mo. 562; Holwerson v. St. L. & S. Ry. Co., 57 S. W. Rep. 770.

The judgment is reversed. All concur.