## HOLDEN v. MISSOURI RAILROAD COMPANY, Appellant.

### Division Two, November 17, 1903.

1. **Negligence: PROPRIETY OF INSTRUCTION.** All instructions must be based upon the particular facts developed in the cause.

2. ————: ·————: APPROACHING CROSSING. If the motorman in charge of a street car discovers that a vehicle is approaching a crossing at a negligent rate of speed, and further observes that the driver and occupants of the vehicle are negligent in not looking out for the approach of the car, then, notwithstanding the negligence of the occupants of the vehicle, it is the duty of the motorman, if in his power, to so regulate the speed of his car as to avoid injuring the occupants of the vehicle. The mere negligence of the injured party in · approaching or in crossing the track will not justify the infliction of an injury upon him, if by the exercise of reasonable care and caution on the part of the motorman, it can be avoided. (Distinguishing, because of the difference in the facts of the cases, Boyd v. Railroad, 105 Mo. 371.)

3. ————: LAWFUL RATE OF SPEED. What is the lawful rate of speed for a street car, at a busy public crossing, in the very heart of a populous city, where vehicles and persons are constantly crossing, is to be determined alone by the conditions and circumstances surrounding the crossing at the time the car is making the crossing.

4. ————: ————: NOT TO BE USED IN INSTRUCTIONS. The words "lawful rate of speed," should not be used in an instruction in connection with the movement of a street car at a busy public crossing in the heart of a public street, if there is also introduced in evidence an ordinance which fixes the maximum rate of speed of street cars. Such words are misleading and too apt to be construed by the jury as referring to the rate fixed by the ordinance.

5. ————: SPEED: ABSOLVED BY ORDINANCE. A city can not, by ordinance fixing the maximum rate of speed of street cars, absolve the railway company of liability for want of care and caution in operating its cars at a busy public crossing. In such case a rate much less than the maximum rate thus fixed may be negligent. The requisite degree of vigilance at a public crossing in a city is designated by the words "ordinary care," which means such care as would be used by prudent persons performing a like service under similar circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Lon O. Hocker* for appellant.

(1) The court should have given the peremptory instruction requested by the defendant at the close of the whole case, for the reason that under the undisputed facts a clear case of contributory negligence was made out against the driver of the wagon, and through him against the plaintiff. (2) The only criticism which can be made of defendant's first instruction is that it is improperly punctuated. However, the sense of the instruction is perfectly clear. This instruction merely states the plain rule of contributory negligence. Jones v. Barnard, 63 Mo. App. 501; Maxey v. Railroad, 113 Mo. 1; Butts v. Railroad, 98 Mo. 272; Easley v. Railroad, 113 Mo. 236; Moody v. Railroad, 68 Mo. 470; Boyd v. Railroad, 105 Mo. 371; Fusilli v. Railroad, 45 Mo. App. 535; Drake v. Railroad, 51 Mo. App. 562; Henze v. Railroad, 71 Mo. 636; Kelsay v. Railroad, 129 Mo. 362. (3) Defendant's instruction 4 declares to the jury that the motorman had the right to assume that the persons in charge of the vehicle would have regard for their safety and not attempt to pass in front of his car if it was obviously dangerous to do so, and had a right to proceed at a lawful rate until it became obvious that the driver of the vehicle would place himself in a situation of peril. This instruction was entirely proper. Boyd v. Railroad, supra. (4) Defendant's instruction 5 requires that the jury find that defendant had been negligent in some of the respects charged in the petition—stating them—before the plaintiff was entitled to recover, and, further, that not even then might the plaintiff recover if the plaintiff was him-

self guilty of negligence directly contributing to his in-
juries, and further, by defining ordinary care.  This.
instruction is certainly beyond criticism.

*Richard A. Jones* for respondent.

(1)   (a)  The fact that the ordinance under which
defendant operates its road forbids it to run its cars
on any portion of its line at a speed in excess of ten
miles per hour, does not give the defendant the right
to operate its cars on all portions of its line at that rate
of speed, nor absolve it from its common-law duties;
and if the exercise of due care required that it slacken
the speed of its cars as they approached a much-
traveled street crossing, such as the pleadings allege
and the evidence shows Thirteenth and Pine streets to
be, to a less rate of speed than ten miles per hour, and
this was not done, and the injury to plaintiff resulted
from such cause, defendant is liable.  VanNatta v.
Railroad, 133 Mo. 13; Hicks v. Railroad, 64 Mo. 439;
Maher v. Railroad, 64 Mo. 276; Pryor v. Railroad, 75
Mo. 610; Taylor v. Railroad, 83 Mo. 390; Step v. Rail-
road, 85 Mo. 234; Urenhart v. Boutell, 15 Mo. App. 592.
(b)   Plaintiff's petition alleged that defendant did not
stop the car that did the injury to plaintiff in the
shortest time and space possible at the first appearance
of danger to him and to the vehicle in which he was
riding and the consequent injury to plaintiff on account
of such breach of duty.  The evidence of plaintiff
tended to establish these allegations.  The ordinance
referred to increased the obligation of defendant to the
public to stop its car in the shortest time and space pos-
sible from ordinary care to the highest degree of dili-
gence in this regard.  Faith v. Railroad, 39 Mo. App.
447, s. c., 105 Mo. 537; Sanders v. Railroad, 147 Mo.
411.  (c)  The jury might well find, under the testi-
mony as to the great length of space over which this
car traveled before being stopped, one of two things:

Either that it was not stopped in the shortest time and
space possible upon the first appearance of danger to
the vehicle in which plaintiff was riding, or, if it was
so stopped, then it was going at a rate of speed over
this crossing not consistent with the exercise of ordi-
nary care and prudence in its operation. The giving of
general instruction 5, at the request of defendant, pur-
porting as it does to cover the whole case, taking away
from the jury's consideration these two acts of negli-
gence, was erroneous. McDermott v. Railroad, 87 Mo.
285; Link v. Westeman, 80 Mo. App. 592; Griveaud v.
Railroad, 33 Mo. App. 458; Wilburn v. Railroad, 36
Mo. App. 203. (2) Instruction 1, given at the request
of defendant, compels plaintiff and the driver of the
vehicle in which he was riding to order their conduct
in approaching Thirteenth street, upon which the car
was running which did the injury, upon the theory that
cars of defendant were operating on that street at a
careless rate of speed. There is no evidence of any
knowledge on the part of plaintiff or the driver that
cars were being so operated. The driver of the vehicle
in which plaintiff was riding, as well as plaintiff, had
the right to assume, not only that the cars of defendant
would be run over this crossing not in excess of ten
miles per hour, but also at such less rate of speed as
an ordinarily prudent man in charge of such car would
have run it in approaching and going over a crossing,
and especially one as much traveled as that at Thir-
teenth and Pine streets is shown by evidence to be.
Kelly v. Railroad, 101 Mo. 67; Gratiot v. Railroad, 116
Mo. 451.; Eswin v. Railroad, 96 Mo. 290; VanNatta v.
Railroad, 133 Mo. 13. This instruction without any
foundation of evidence upon which to base the assump-
tion contained in it, cut away from plaintiff the very
theory upon which he must depend for his recovery.
It is misleading and erroneous. VanNatta v. Railroad,
133 Mo. 13; Ford v. Railroad, 63 Mo. App. 133;
Ludowski v. Polish Roman Society, 29 Mo. App. 337;

Gorham v. Railroad, 113 Mo. 409. (3) (a) Upon defendant's theory of the case their motorman who was in charge of the car which did the injury to defendant, testified that he saw the vehicle in which plaintiff was riding being driven rapidly down Pine street directly · towards defendant's track; that neither plaintiff nor the driver of the vehicle was looking towards the car or seemed to be conscious of the fact that the car was coming. Under this state of facts the court erred in giving, at the request of defendant, instruction 4; which instruction tells the jury that even after the motorman saw the vehicle in which plaintiff was riding moving towards the track, still he had a right to assume that it would stop when it came to the track, and that such motorman was not bound to stop his car, and had a right to proceed at a lawful rate of speed until such vehicle was about to be placed in a position of peril by going upon the track. This instruction tells the jury that under the conditions before noted, nevertheless, the motorman still had a right to proceed at a lawful rate of speed; which the jury might well and undoubtedly did assume, in the absence of a definition of what was meant by a lawful rate of speed, to mean the highest rate of speed permitted by the ordinance under which defendant operated, viz., ten miles an hour. The use of these words in the instruction, without explanation, was misleading, and made the jury the judges of the law as well as the facts. State v. Forsythe, 69 Mo. 667. (b) The rate of speed at which the motorman had a right to proceed was such rate of speed as a man of ordinary prudence would proceed under similar circumstances. This instruction ignores the duty of the company's motorman in this regard to seek to prevent the injury so soon as there was the first appearance of danger to plaintiff and the vehicle in which he was riding, and tells the jury, as a matter of law, that such motorman was not bound to do anything in this connection until the vehicle, in which plaintiff

was riding, was about to go on the track.   It is plainly erroneous.   Bunyan v. Railroad, 127 Mo. 13.   (4) The giving of the instructions herein noted would, upon appeal, call for reversal.   Much more then the reason for this tribunal to affirm the order of the trial court, granting new trial on such account, for such order is presumptively correct, and even though founded upon instructions which might not impel the reversal of judgment upon appeal, will not be interfered with unless the trial court has clearly abused its discretion.   Hopper v. Southern Hotel Co., 143 Mo. 378.

FOX, J.—In this action the plaintiff sues to recover damages on account of injuries alleged to have been sustained on the 4th day of December, 1897, through a collision between defendant's car and a wagon in which he was riding.

The action was originally instituted against both the Missouri Railroad Company and the Forest Park, Laclede & Fourth Street Railway Company, but, before trial, a dismissal was entered as to the Forest Park, Laclede & Fourth Street Railway Company, and the action continued against the Missouri Railroad Company alone.

The Missouri Railroad Company, at the time in question, operated the railway and cars of the Forest Park, Laclede & Fourth Street Railway Company on Thirteenth street, at its intersection with Pine street, in the city of St. Louis, Missouri.   Thirteenth street extends north and south, and Pine street east and west.   There was only one track in Thirteenth street, which was used by north-bound cars.

The plaintiff was an employee of the Wainwright brewery.   At the time of the accident, plaintiff and a man named Harry Jones, also an employee of the Wainwright brewery, were driving a wagon belonging to said brewery, east on Pine street.

The petition of plaintiff declares:

"That on or about the fourth day of December, 1897, plaintiff was being driven east on Pine street in said city, and while the wagon in which he was riding was crossing Thirteenth street and the tracks of defendants, a car of the defendants, operated by their servants, came north on Thirteenth street and struck the wagon in which plaintiff was riding, and threw the plaintiff out upon the street and severely and seriously injured him. That Pine street, at the point where it crosses said Thirteenth street, is and was at the time of the happening of the events hereinbefore and hereinafter narrated, a public thoroughfare of said city of St. Louis, on which large numbers of vehicles and persons are almost constantly passing and crossing said Thirteenth street and the tracks of defendants, and it was the duty of the defendants and their servants in crossing the said street to use care to run their cars at such rate of speed as would permit the person in charge thereof to have them constantly under control so that he could very quickly stop them to avoid injury to vehicles and persons at said crossing, and to keep a lookout for vehicles and persons that might be approaching the track upon which said cars are running and to ring the bell of said cars and warn drivers of such vehicles and other persons of the approach of said cars to said crossings. That the defendants constructed and maintained said track and run their cars thereon under and by virtue of authority granted and restrictions and limitations prescribed by the city of St. Louis, among such restrictions being the provisions of Ordinance No. 17072 of said city, approved March 4, 1893, entitled, 'An ordinance authorizing Forest Park, Laclede & Fourth Street Railway Company to construct a railroad over, along and across certain streets in the city of St. Louis and in Forest Park, and to operate the same by electric power,' by the terms of which ordinance defendants are expressly restricted from running their cars along said Thirteenth street,

or on any other part of said line, at a rate of speed in excess of ten miles an hour. That defendants, in the running of their cars on said Thirteenth street, are also governed by and amenable to Division four of section 1275 of article 6 of Revised Ordinances of the city of St. Louis (1892), being in words following, to-wit:

" 'Fourth. The conductor, motormen, gripmen, driver, or any other person in charge of each car, shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles the car shall be stopped in the shortest time and space possible.' "

Plaintiff by leave of court amended his petition so as to show acceptance by defendant of the terms of the ordinance of the city of St. Louis, subdivision 4, section 1275, Revised Ordinance 1892, requiring person in charge of car to keep a vigilant watch for all vehicles and persons on foot, either on the track or moving towards it, and to stop at the first appearance of danger to such persons or vehicles in the shortest time and space possible.

The petition alleges a breach of the duties aforesaid and the consequent injury to plaintiff. Defendant's answer is, first, a general denial, and second, a plea of negligence on the part of the plaintiff and of one Harry Jones, who was driving the wagon in which plaintiff was riding.

The evidence on the part of the plaintiff tended to show that the crossing at Pine and Thirteenth streets, where the injury occurred, was a busy one; that plaintiff and Harry Jones were driving east on Pine street in a one-horse stake wagon; that the horse was going down grade at a trot, about five to seven miles an hour; that when the horse was within four or five feet of the track they looked south and saw a car coming rapidly, about twenty-five feet away; the driver turned the horse diagonally across the street towards the north,

and after reaching the north crossing of Pine street, while one wheel of the wagon was on the car track, the car which had not yet stopped, hit the rear of the wagon with such force as to precipitate both plaintiff and the driver onto the granite pavement of the street, the plaintiff striking on his head, cutting a gash about six inches long. The evidence of the plaintiff also tended to show that the car was approaching at the rate of about fifteen miles an hour and that the gong was not sounded.

The evidence of the defendant tended to show that the plaintiff and Harry Jones were driving the wagon east on Pine street at a rapid rate of speed; that the bell was sounded violently; that the car was going from four to seven miles an hour; that the car was stopped within twenty-five feet after the first application of the brakes and that just as the car stopped the wagon struck the front step of the car and splintered it, throwing the two men from the seat of the wagon. Evidence was also introduced tending to show that a party standing thirty-eight feet west of the west rail of the car track could see a distance in Thirteenth street of seventy-two feet.

No direct evidence was introduced by plaintiff tending to show that the motorman failed to stop the car within the shortest time and space possible, or within what distance a car, such as the one involved, under the conditions and surroundings existing at the time, could be stopped.

Under the instructions of the court the jury found a verdict for the defendant. Within four days after the rendering of said verdict, the plaintiff filed his motion for a new trial, setting up twelve grounds; which said motion the court sustained upon the ground that the court gave to the jury erroneous instructions, and from which order granting a new trial the defendant has appealed to this court.

The instructions given on the part of the defendant are as follows:

"1.   The court instructs the jury that although the plaintiff may not have been the driver of the wagon mentioned in the testimony, nevertheless plaintiff, situated as he was, had no right to rely implicitly upon the care and prudence of the driver on the seat beside him for his own safety, but, it was his duty, if said driver was approaching said Thirteenth street on which cars were passing at a careless rate of speed, to attempt to have him check his speed to a safe rate, and if the jury find that under the circumstances said wagon was approaching defendant's tracks at a careless rate of speed, and that plaintiff, situated as he was, made no effort to have said speed diminished, and that such action of the plaintiff contributed directly to said collision and his injuries, then he can not recover, and your verdict must be for defendant.

"2.   If the jury believe from the facts and circumstances given in evidence that the plaintiff, situated as he was in the wagon, would in the exercise of ordinary care have seen the approaching car on Thirteenth street in time to have warned the driver of its approach, and in time to have prevented the collision, then it was his duty to have done so, and if he failed to do so, then he can not recover, and your verdict must be for defendant, notwithstanding the defendant may also have been negligent.

"3.   The court instructs the jury that it is the duty of persons on public streets, whether on foot or in vehicles, to be ordinarily prudent and careful in crossing street car tracks, and to both look and listen for approaching cars, and even though the jury should find in this case that the gong of the car was not sounded, still, if the plaintiff could by exercising ordinary care with respect to the speed with which he approached the track, and in looking for the approach of cars, have

Vol 177 mo—30

caused said wagon to be stopped in time to avert the collision, then your verdict will be for the defendant.

"4.   Even though the servants of the defendant in charge of its car saw the plaintiff and his vehicle moving towards the track along which their car was moving, still they had the right to assume that the person or persons in charge of said vehicle would have regard for their own safety, and not attempt to pass in front of the said car if it was obviously dangerous to do so; and the said servants had the right to assume that said vehicle would be stopped when it came to the track and not be driven across in front of the car if such a course was manifestly unsafe, and the said servants had the right to proceed at a lawful rate of speed, and were not bound to attempt to stop their car until the said vehicle was about to be placed in a position of peril by going upon the track or so close to it as to endanger its safety and the safety of those therein.

"5.   The court instructs the jury that unless they believe from the greater weight of the evidence that the defendant, through its servants in charge of its car, at the time and place of the accident, negligently ran its car at a speed greater than ten miles per hour, or failed to keep a vigilant watch for persons and vehicles about to be in danger of being struck thereby, or negligently failed to ring the gong, and that one or more of such acts of negligence were the cause of the accident, and the plaintiff's injuries, then their verdict will be for the defendant.

"And even though the jury should find that the defendant, through its servants, was guilty of one or more of the acts of negligence hereinbefore stated, if they further find that the plaintiff was himself guilty of negligence which directly contributed to the bringing about of the accident, then their verdict must be for the defendant.

"By the term 'ordinary care' as used in these instructions is meant that degree of care which would be

used by a person of ordinary prudence under the same or similar circumstances.''

It will be observed that the court sustained the motion for a new trial in this cause upon the ground of erroneous instructions given to the jury. From the action of the court upon such motion, this cause is now presented to this court for review. We have given due attention to the testimony in this cause, as disclosed in the record, and have reached the conclusion that the court was warranted in submitting it to the jury. Hence, the only question left for investigation is the correctness or incorrectness of the declarations of law.

Appellant insists that the declarations of law were appropriate to the facts developed in this cause, and were, in all respects, in proper form.

The issues tendered by the petition in this suit may be briefly stated: First, that the injury occurred at a crossing of a public thoroughfare in the city of St. Louis—Thirteenth and Pine streets; that at said point vehicles and persons are almost constantly passing and crossing; that it was the duty of appellant, in the management and operation of its railway, to run its cars at that point at such rate of speed and with such care as to avoid injury to vehicles and persons; and that the injury complained of resulted from such neglect of duty in operating its cars at a negligent rate of speed.

Second. That the car was run in excess of ten miles an hour, in violation of ordinance No. 17072, and also in violation of the provisions of section 1275 of article 6, Revised Ordinances of the city of St. Louis, which last-mentioned ordinance provided:

''Fourth. The conductor, motormen, gripmen, driver, or any other person in charge of each car, shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible.''

It is made apparent, from an examination of the petition, that the recovery sought in this cause is not confined to a violation of the ordinances of the city, but includes a sufficient charge of negligence, in the operation of the cars at a careless and negligent rate of speed, under the conditions and circumstances at the point where the injury was inflicted.

Treating of the instructions in the order as numbered, we find instruction numbered 1 substantially correct; the error consists in the failure to give due attention to punctuation. (This is frankly conceded by learned counsel for appellant.) This omission may have tended to mislead the jury in the application of the facts to this declaration.

Properly understood, as doubtless the trial court intended it to be interpreted and correctly punctuated, the "careless rate of speed" designated in the instruction, refers to the driver of the wagon in approaching the crossing; but a disregard in this respect might have a tendency to mislead the jury and incline them to apply the terms "careless rate of speed" to the cars. This is the only criticism to which this instruction is subject.

To enable the jury to intelligently apply the facts to the law as declared by the court, such declarations should be clear and unambiguous. Upon the retrial of this cause, it is suggested that such terms be employed in the instruction, as will remove all doubt as to whom the terms "careless rate of speed" are applicable.

Instruction numbered 4 finds support in Boyd v. Railroad, 105 Mo. 371. Upon the facts in that case, this court approved of the following declaration: "That it was the duty of deceased to look and listen if he could see or hear the train, for the purpose of avoiding injury by it, and, if at any time he might have stopped his progress and avoided injury, then he was guilty of contributory negligence;" and, "If the servants of defendant in charge of its train saw the deceased approaching the track, then they had the right

to presume that he would not attempt to cross the track immediately in front of the train, and to proceed without abating the speed of the train.''

It may be conceded, predicated upon a state of facts which would warrant such an instruction, that the rule announced is the correct one. It is fundamental that all declarations must be based upon the particular facts developed in the cause. The correctness of instruction numbered 4 must be determined from the testimony upon which it purports to be based. The motorman, William A. Colson, at the time of this injury, testified partly as follows:

''They were coming down at a very rapid rate of speed, and as we crossed, coming across Thirteenth street, I heard the rumbling, which attracted my attention, as I approached, and I saw the teams coming down the street, rang my bell very violently, and the parties didn't seem to pay any attention or notice me.''

It will be observed that this instruction in guiding the jury to a verdict, told them, in respect as to what the servants of the defendant had the right to assume:

''And the said servants had the right to assume that said vehicle would be stopped when it came to the track and not be driven across in front of the car if such a course was manifestly unsafe, and the said servants had the right to proceed at a lawful rate of speed, and were not bound to attempt to stop their car until the said vehicle was about to be placed in a position of peril by going upon the track or so close to it as to endanger its safety and of those therein.''

This assumption of the servants, that the vehicle or persons in approaching a crossing will stop before a perilous position is reached, is based upon the right of the servants to presume that the person and vehicle will approach the crossing with care and caution, and they have done their duty in the way of looking out for an approaching car; but if, on the other hand, as the motorman says, they were negligent and that he

saw them, and they were not heeding his signals and seemed to pay no attention to the car, does 'the rule announced in the instruction, that the servant had the right to assume that they would stop, apply? The servant can not assume a certain course of conduct and at the same time say that he knew that course of conduct was not being pursued. We take it, that if the motorman discovered that the vehicle was approaching this crossing at a negligent rate of speed, and that he further observed that they were negligent in not looking out for the approach of the car, then, notwithstanding the negligence of the plaintiff, it was the duty of the motorman to so regulate the speed of his car, if in his power, as to avoid the infliction of any injury. In other words, the mere negligence of the plaintiff, in approaching and crossing the track, would not justify the infliction of an injury, if by the exercise of reasonable care and caution, it could be avoided. The servant will not be permitted to assume that a person is aware of the approach of the car and will stop, in due time to avoid injury, and at the same time admit that he knows that the person was not performing his duty in that respect, in ignoring the violent ringing of the bell, giving no attention or notice to the approach of the car. It will be noted that this instruction tells the jury, in effect, that notwithstanding the motorman says he violently rang the bell and that plaintiff and the driver gave it no attention or notice, it was proper to continue the movement of the car at a *lawful rate of speed*. The motorman further testifies that upon observing the conduct of the plaintiff and driver in their efforts to make the crossing, he stopped the speed of the car as soon as possible; if the motorman did that, the defendant was not liable for the injury; but the instruction under discussion does not proceed upon that theory. It practically states the law to be that, notwithstanding the surroundings at the time, he had the right to proceed at a lawful rate of speed. What was

the lawful rate of speed as contemplated by the instruction? Was it ten miles an hour as fixed by the ordinance? There is no law to which our attention has been directed, fixing a legal rate of speed. The ordinance simply undertakes to limit and regulate the speed, but it by no means, by such limitation, determines a legal rate of speed at a busy public crossing, in the very heart of a populous city. The rate of speed at a public crossing, where vehicles and persons are constantly passing, is fixed alone by the conditions and circumstances surrounding the street at the time the car is making the crossing. In our opinion, the terms ''lawful rate of speed'' has no place in that instruction. They are misleading and too apt to be construed by the jury as being the rate as fixed by the ordinance. If warranted under the facts in assuming that plaintiff and driver would stop before reaching a perilous position, yet such care and watchfulness should be exercised in the movement of the car at that point, as the conditions and circumstances would dictate to a reasonably careful and prudent man.

In Bunyan v. Railroad, 127 Mo. l. c. 21, the views as herein expressed upon this instruction are fully supported. This court said in that case:

''The testimony of the gripman shows that he discovered that deceased was staggering and did not know what he was doing when at least five or six feet from the track. It was his duty under these circumstances to have at once taken precautions to prevent the collision. He should not have deferred action until the deceased had placed himself in a dangerous position, when it was manifest to him that he was heedlessly staggering into it. This principle, dictated as it is by common humanity, was recognized by the gripman, for he says that on seeing that deceased was paying no attention, and did not seem to know what he was doing, he immediately warned him of the danger and used all possible efforts to avoid injuring him.

"Now it will be seen that the instruction, which only required the gripman to attempt to avoid injuring deceased 'after he had put himself in danger,' fell short of declaring the whole duty required of him in the circumstances. The primary object of this instruction was, evidently, to inform the jury as to the care required by deceased himself. So far as the instruction was confined to this purpose the law was correctly given, but it did not declare the duty of the gripman as hereinbefore announced. The jury could have drawn no other conclusion from the instructions than that the gripman, though seeing that deceased was staggering, was paying no attention, and was not going to stop, was still under no obligation to attempt to avoid striking him until 'after he had put himself in danger.'
. . .

"The first instruction was clearly misleading and in conflict with other instructions given. It undertook to dispose of the whole case, and in effect directed a verdict for defendant, if deceased was himself negligent, unless the gripman failed in his duties after deceased had put himself in a position of danger. It wholly ignored the evidence of the gripman, and his duty to prevent the injury as soon as he saw that deceased was carelessly walking onto the track. The petition charged negligence in failing to stop the car in time to prevent the accident. This averment was sufficient to authorize the admission of evidence that the gripman knew that deceased was not going to stop, especially when no objection was made to it when offered. Indeed, this evidence was introduced by defendant itself. We are of the opinion that error was committed in giving this instruction."

Instruction numbered 4, upon the facts as disclosed by the record in this cause, was erroneous.

This leads us to the only remaining question, in respect to the correctness of instruction numbered 5. This instruction clearly confines the right of recovery,

so far as the rate of speed is concerned, to a rate of speed in excess of ten miles an hour. This, in our opinion, is a misconception of the law, in the operation of railways across busy public streets in a large, populous city. As before stated, in the discussion of instruction numbered 4, this ordinance limiting and regulating the speed of cars on street railways, can not be construed as authorizing the operation of cars at a public crossing at any particular rate of speed, regardless of conditions at the time of the crossing. The rate of speed at such points must be regulated alone by the conditions and circumstances that confront the operator or motorman at the time. Operating a car at a rate of speed in excess of ten miles an hour, from which an injury resulted, would be negligence, because in violation of the ordinance under which the railway assumed to operate its cars. Operating a car across a public street, at the rate of five miles per hour, from which an injury resulted if the conditions and circumstances were such as to prompt a reasonable and careful operator to lessen the speed, and thereby avoid the injury, would be equally negligent, and the city of St. Louis can not, by ordinance, absolve the railway company from liability for want of care and caution, in operating its cars across the public streets, by limiting and regulating their speed.

This rule is clearly announced in numerous cases by this court. In VanNatta v. Railroad, 133 Mo. l. c. 19, BURGESS, J., speaking for the court, said:

"What constitutes negligence in any given case, must necessarily depend upon the facts connected with the accident which is claimed to have been occasioned thereby, and the place where it occurred. What would be a negligent rate of speed for an electric street car in one locality, would not necessarily be so in another part of the same city or the same street. Plaintiff's right to the use of the street where the accident occurred was concurrent with that of defendant company. It

happened under circumstances where and when the law required of those in charge of the car the exercise of such care and watchfulness, including its rate of speed, as the circumstances of the case, and the place where the accident occurred. Under the facts and circumstances in evidence the court would not have been justified in declaring as a matter of law, that the car was not moving at a rapid rate of speed at the time of the accident. There was sufficient evidence on this question to justify giving the instruction.''

In Hicks v. Railroad, 64 Mo. l. c. 439, in discussing this subject, this court very forcibly announced the duties of a railway company to the public:

''The care and caution required of railroad companies in running their trains, are commensurate with the danger to persons and property incident to that mode of transporting freight and passengers, and at some points on the road greater care is exacted than at others. In running through towns and cities, and over public crossings, they are expected to be more careful than at other places where not so likely to injure persons or property. In approaching stopping places where people are in the habit, for business or pleasure, of congregating, they must exercise the care and prudence which a proper regard for human life dictates, and to hold that a railroad company is only liable for wanton injury in such a case as we are considering, would encourage recklessness in the running and managing of trains, which would be intolerable. These companies not only owe a duty to passengers and others lawfully on their tracks and platforms, but a duty to the public to exercise the rights conferred upon them, with a due regard to the safety of all persons and property.''

We find also in Burger v. Railroad, 112 Mo. l. c. 246, a very clear expression and approval of the well settled rule in respect to the duties of railway compa-

nies to the public. MACFARLANE, J., in announcing the opinion of the court, said:

"We do not think it follows, from the fact that the statute only enjoins these crossing signals, that no others are required under any circumstances. Our courts have declared, over and over again, that the greatest diligence, watchfulness and care should be observed by those running and operating trains in towns and cities, especially on and over streets and other public places therein. These duties they owe to every one who has the right to use such public places in common with them."

To the same effect is the case of Frick v. Railroad, 75 Mo. l. c. 609. The court said in that case:

"A less degree of vigilance will ordinarily be required between the streets of a town or city, than will be required at the street crossing, or when running longitudinally in a street; but undoubtedly some vigilance is required even between the streets, and the degree required will necessarily vary with the attendant circumstances. In any case the requisite degree of vigilance may be properly designated by the words 'ordinary care,' that is, such care as would be ordinarily used by prudent persons performing a like service under similar circumstances."

Thus we find the charge of negligence as to rate of speed in operating cars, from which an injury results, is always one to be determined from the attendant conditions and circumstances.

This unbroken line of expression as to the subject being discussed is emphasized in the dissenting opinion of SHERWOOD, J., in Lamb v. Railroad, 147 Mo. l. c. 204. While their views are expressed in a dissenting opinion, it is apparent from the majority opinion, that in the expression herein quoted, there was no disagreement. The clear announcement of the doctrine by that able and distinguished judge is pertinent to the question involved in instruction numbered 5 given in this cause,

and fully supports the views as herein expressed.   He said:

   "Outside of the statute, and under the principles of the common law, a railroad corporation would not perform its full duty of ordinary care, unless those employed on a switching engine, engaged in its customary avocation, should ring its bell, or if necessary, take any other precaution adapted to the exigency of the situation.   It is this exigency which, like the mercury in the thermometer, determines to what degree prudence shall rise in order to reach the mark of ordinary care."

   The petition in this cause is broad enough to include the charge of a negligent rate of speed at the public crossing of Thirteenth and Pine streets, and that question should not have been ignored in the declarations of law.   We have reached the conclusion that instruction numbered 5, as given by the trial court, at the request of the defendant, was erroneous, in limiting plaintiff's right of recovery to the violation of the city ordinance.   The action of the trial court, in sustaining the motion for new trial, is affirmed.

   All concur, except *Burgess, J.,* absent.