STORY, Respondent, v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

St. Louis Court of Appeals, November 29, 1904.

1. **CONTRIBUTORY NEGLIGENCE:** Demurrer to Evidence:
   Physical Facts. Where a plaintiff in an action for personal in-
   juries testifies to a state of facts which may seem to some
   minds incredible, yet if they are not opposed to the common
   course of nature nor contradicted by the physical facts present,
   he is entitled to have his cause submitted to the jury, if his evi-
   dence tends to establish the facts necessary to entitle him to
   recover.

2. ———: ———: ———. And for the purpose of a demurrer, his
   narrative must be taken as absolutely true and he must be given
   the benefit of every reasonable inference deducible therefrom.

3. **STREET RAILWAYS:** Speed Ordinance: Negligence Per Se.
   The running of a street car in excess of the speed limited by or-
   dinance is negligence per se.

4. ———: ———: Common Law Negligence. At a public crossing
   in a populous city, a speed ordinance is not controlling; the
   speed at which a car may run at the intersection of streets
   is fixed by conditions and surroundings independent of the or-
   dinance.

5. ———: Negligence: Warning of Approaching Car. In an ac-
   tion against a street railway company for injuries received by
   plaintiff by a collision with a street car at a crossing, an in-
   struction which submitted to the jury a question as to whether
   the motorman was negligent in failing to "give timely warn-
   ing of the approach of his car," is sufficient without specifying
   in what manner the warning should be given, it being a matter
   of common knowledge that such warning is given by sounding
   the gong.

6. ———: ———: Variance: Harmless Error. An instruction
   which improperly submitted the question of negligence on the
   part of the motorman in failing to exercise ordinary care to stop
   the car after he saw or might have seen plaintiff's danger, was
   harmless error and not prejudicial in the absence of evidence
   that the motorman either saw or could have seen the plaintiff
   in time to have stopped the car, and where the only negligence
   shown was running at an excessive speed; the court will not
   presume that the jury found the motorman guilty of a negligent
   omission of duty of which there was no evidence whatever.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

The evidence for plaintiff establishes one of two propositions: Either, first, that the plaintiff did not look or listen for the approaching car from the west; or, if he did look, that the west-bound car obstructed his vision, and that he started across the track without waiting a sufficient length of time to ascertain whether a car was coming on the other track or not. In either of these contingencies, the demurrer to the evidence offered at the close of the plaintiff's case and at the end of the whole case, should have been sustained. If the car obstructed the plaintiff's vision when looking to the westward to see if an east-bound car was approaching, then it was his duty to stop and wait until he could see whether or not there was an approaching car on the south track, before blindly proceeding to cross over that track. Hornstein v. United Railways Co., 97 Mo. App. 271, 70 S. W. 1105; Ledwidge v. Transit Co., 73 S. W. 1008; Barrie v. Transit Co., 76 S. W. 706.

*W. H. Cocke* and *W. Hall Trigg* for respondent.

It is a well-known principle of law that, in the absence of a statute or ordinance, no rate of speed, however immoderate, is, of itself, and as a matter of law, a negligent rate. In such a case the principles of the common law must be resorted to, and an immoderate rate of speed is negligence or not, owing to the circumstances. Wallace v. Railway, 74 Mo. 597; Weller v. Railroad, 120 Mo. 655, 23 S. W. 1061, 25 S. W. 532. Therefore, where reliance is placed upon common-law

negligence, it is for the jury to determine in each particular case whether or not the rate was a negligent one, all attendant and surrounding circumstances considered. Taylor v. Railroad, 83 Mo. 390; Klockenbrink v. Railway, 81 Mo. App. 359.

STATEMENT.

About the hour of one a. m., July 5, 1903, plaintiff was driving his carriage south on Nineteenth street in the city of St. Louis. At the intersection of Nineteenth and Olive streets his carriage and horses were struck by an east-bound car on Olive street, resulting in the breaking of his forearm, the death of his two horses, and the demolishing of his carriage. The suit is to recover the damages incurred.

The petition is in two counts. In the first count, the following acts of negligence are alleged:

"1. Omitting to use reasonable care to run said car at an ordinary rate of speed, but, on the contrary, then and there causing it to run at a dangerous rate of speed so that it was not under reasonable control.

"2. Failure to use ordinary care in giving signals of warning by the bell of said car.

"3. In omitting to use ordinary care to stop the car in time to avoid the collision after such agents and servants discovered plaintiff's team in a position of danger upon the track, and at a distance sufficient to have permitted the car to have been stopped, had said agents and servants been then and there in the exercise of ordinary care."

The second count predicates plaintiff's right to recover on what is known as the speed ordinance, which limits the speed at which street cars may run to ten miles an hour, in the district where the collision took place.

The answer to each of these counts was a general denial and a plea of contributory negligence.

Plaintiff's evidence tends to show that he was driving south on Nineteenth street and when he arrived at about the building line of Olive street he heard a car bell to the east, looked in that direction and saw a car travelling west on the north track (there being double tracks on Olive street) and he stopped his horses until this car passed. After the car passed, he testified, he could see west halfway the block (one hundred and eighty feet). He looked west and saw no car, then looked east and saw none and heard no car bell, and proceeded across Olive street. When his horses were on the south track, he saw a car on that track travelling east at a rapid rate of speed and close upon him and was unable to get over the track in time to avoid the collision, the car striking his horses and carriage, throwing him into the air and carrying or pushing his horses on for about one hundred feet before the car was stopped. One horse was killed outright and the other was so badly injured that he had to be shot, and the carriage was badly smashed. Plaintiff had a broken forearm and was externally and internally bruised and injured.

Plaintiff also testified that he had driven carriages in St. Louis for a number of years, was familiar with the locality where the collision occurred, and knew there was a double track on Olive street over which cars passed both east and west at frequent intervals. Several other witnesses, who were at or near the scene of the accident, testified for plaintiff. They all stated that the car was running at a rapid rate of speed, one estimating the speed at eighteen miles per hour, and four or five others estimating it at from twenty to thirty miles per hour, and all testifying that they did not hear any car bell ringing.

On the part of defendant, the evidence tends to show that the car was travelling from seven to ten miles per hour and that the motorman sounded the gong in the middle of the block between Nineteenth

and Twentieth streets. As soon as the car travelling west cleared the crossing at Nineteenth street, plaintiff drove his carriage immediately behind and so near in front of the car going east that it was impossible to stop it in time to avoid the collision; that the moment plaintiff's carriage came in view, the motorman did all in his power to stop the car. Plaintiff's evidence tends to show that the west-bound car had moved from fifteen to twenty feet before he started across the street.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered an instruction that under the law and the evidence, plaintiff could not recover. The instruction was approved.

. The court gave the following instruction for plaintiff:

. 1. "If, from the evidence, you find and believe that between 12 and one o'clock a. m., July 5, 1903, plaintiff was thrown from his carriage and injured, and that his carriage was dragged and horses killed by reason of one of defendant's cars going east on Olive street, striking said horses and carriage at the intersection of Nineteenth and Olive streets, in the city of St. Louis; and, if you find and believe from the evidence that plaintiff looked and listened for the east-bound car before driving on defendant's track, and used ordinary care in approaching said track, and thereafter exercised reasonable and ordinary care for his own protection when he discovered his dangerous position on said track; and if you find and believe from the evidence, that defendant's motorman in charge of said car was running said car at a negligent rate of speed, taking into consideration the location and surrounding circumstances, or that said motorman negligently failed to give a timely warning of the approach of said car, or that said motorman failed to exercise ordinary care to stop the said car after he saw or by the exercise of ordinary care might have seen the plaintiff in a dangerous position on or near said track, and

that one or more of such negligent acts on the part of defendant's motorman was the direct cause and proximate cause of the collision, then your verdict must be for the plaintiff, providing you further find from the evidence that the place where plaintiff so looked and listened for such east-bound car was a point from which he had an unobstructed view of said east-bound track westwardly from Nineteenth street for such a distance that he could by exercising ordinary care have crossed said track without being struck by a car proceeding thereon at a rate of speed of ten miles per hour, and that upon so looking and listening, he neither saw nor heard such east-bound car approaching.''

BLAND, P. J. (after stating the facts).—1. Defendant assumes from the environment, plaintiff's evidence shows surrounded him, that the west-bound car so obstructed his view that plaintiff could not see the east-bound car and it was his duty to have held his horses until the west-bound car had passed a sufficient distance west to enable him to see whether or not there was a car approaching from the west. The assumption may be correct, though it is not supported by plaintiff's evidence. He said the west-bound car was an open one and he could see through it, if so, then it was not such an obstruction as to entirely cut off his view from the south track, it being shown that the street lamps were burning at the time. Plaintiff testified positively that he looked west and could see one hundred and eighty feet in that direction along the south track, and that he saw no car coming from the west. If the car was running twenty or thirty miles per hour, it is not impossible that plaintiff, when he started to cross the street, looked one hundred and eighty feet west and did not see the car, for the reason it was probably a greater distance than one hundred and eighty feet west of him at the time. The physical facts, therefore, are not conclusively shown to be such that if plaintiff

looked, when he said he did, he would have seen the car, nor do they show conclusively that the west-bound car so obstructed his view that he could not see one hundred and eighty feet west along the south track. For these reasons the trial court was not authorized to say as a matter of law that plaintiff was guilty of contributory negligence. The facts in the case are materially different from the facts in the case of Ledwidge v. St. Louis Transit Co., Mo. App., 73 S. W. 1008, and Hornstein v. United Railways Co., 97 Mo. App. 271, 70 S. W. 1105, cited and relied on by the appellant. The law is that where a plaintiff testifies to a state of facts, though they may to some minds seem incredible, yet, if they are not opposed to the common course of nature nor contradicted by the physical facts present, he is entitled to have his case submitted to the jury, if his evidence tends to establish the facts necessary to entitle him to recover, and where a demurrer to his evidence is offered, for the purpose of a demurrer, his narrative must be taken as absolutely true and he should be given the benefit of every reasonable inference deducible therefrom. Baird v. Railway, 146 Mo. l. c. 281, 48 S. W. 78; O'Mara v. St. Louis Transit Co., 102 Mo. App. l. c. 210, 76 S. W. 680.

2. Appellant objects to instruction No. 1 on the ground that no standard of what negligent speed is, is stated in the instruction. What is known as the speed ordinance was read in evidence by the plaintiff. This ordinance limited the speed of cars to ten miles per hour in the district where the accident occurred, therefore, a speed in excess of ten miles per hour would, by virtue of the ordinance, be a negligent speed *per se*. Weller v. Railway, 120 Mo. l. c. 655, 23 S. W. 1061, 25 S. W. 532; Liddy v. Railroad, 40 Mo. 506; Gratiot v. Railroad, 116 Mo. 450, 21 S. W. 1094; Bluedorn v. Railway, 121 Mo. 258, 25 S. W. 943. But the ordinance was not controlling, in the circumstances as shown by the evidence in the case. Plaintiff was at

a public crossing in a populous city. True, it was in the nighttime, but the streets, while not so crowded in the night as in the day, are travelled by the public at all hours and the speed at which a car may run at the intersection of streets is not fixed by ordinance but by the conditions and surroundings. Holden v. Railway, 177 Mo. 456, 76 S. W. 973. The instruction so declared the law and is not objectionable in this particular. The next objection to the instruction is, that it submitted to the jury to find whether the motorman negligently failed to give a timely warning of the approach of the car. Counsel makes this inquiry: "How should the warning be given?" The answer is, "By sounding the gong," which is known by everyone at all familiar with street car traffic to be furnished on every car for the express purpose of giving warning when necessary. This is common knowledge, and the jury must be presumed to have been possessed of it. The third objection to the instruction is that the terms of the instruction are, "that said motorman failed to exercise ordinary care to stop the said car after he saw, or by the exercise of ordinary care might have seen the plaintiff in a dangerous position on or near said track," whereas the petition alleges, that he failed to stop the car after he saw the plaintiff's perilous position. The contention is that by introducing the phrase, "or by the exercise of ordinary care might have seen," into the instruction, a new element of negligence was introduced in the case, not alleged in the petition. Conceding the objection well taken, the error in the instruction was not prejudicial for the reason there is not a ray of evidence in the record that the motorman either saw or could have seen the plaintiff in time to have stopped the car and avoided the injury; on the contrary, the uncontradicted evidence is that the plaintiff was not seen and could not have been seen by the motorman in time to have avoided the collision, and we will not presume that the jury found the motorman guilty of a negligent

omission of duty of which there is no evidence whatever. The proviso found at the end of the instruction is objected to. This proviso is predicated on plaintiff's evidence, which, if true, exculpated him of contributory negligence. The criticism of the proviso is, in reality, a criticism of plaintiff's evidence, and might have very properly been made in the argument to the jury but is inadmissible as a criticism of an instruction based upon that evidence. The court gave an instruction based on the second count in the petition, which is criticised in the same manner and for the same reasons as the proviso to the first instruction. We think the instruction (quoted below) is a fair presentation of the law of the case as applied to the allegation in the second count of the petition, and is supported by the evidence tending to prove the allegation of that count.

"2. If you find from the evidence that defendant's motorman was running said car at a rate of speed in excess of ten miles per hour at the time, and just prior to the collision with plaintiff's horses and carriage and that said excessive rate of speed was the direct and proximate cause of the collision and consequent damages to plaintiff and his property; and if you further find from the evidence that plaintiff before going on the east-bound track looked and listened for an approaching car and neither saw nor heard one and that plaintiff exercised ordinary care in approaching and driving on to defendant's said track, then your verdict must be for the plaintiff."

For the defendant, the court gave twelve instructions presenting the law of contributory negligence in every possible phase that the evidence warranted. Defendant complains that the court modified some of its instructions before giving them and refused others that it asked. There is no valid ground for this complaint. The court was not only liberal in the number of instructions given for the defendant, but was also

liberal in its instructions on the law of contributory negligence, the defense relied upon at the trial.

We have been unable to discover any reversible error in the record and affirm the judgment. All concur.