T. JAY HUBBARD v. NOAH BARTHOLOMEW, Appellant.

**New Trial:** SUFFICIENCY OF EVIDENCE. The granting of a new trial, 1 after direction of a verdict for defendant, because of insufficiency of the evidence to support a verdict for plaintiff, amounted to a holding that the court was mistaken in the first instance and that the evidence was sufficient, and involved a question of law rather than the exercise of a discretion.

**Highways:** DUTY OF TRAVELERS IN PASSING : STATUTE. The term ''meet-2 ing each other'' as used in the statute providing that persons with vehicles upon the highway when meeting shall turn to the right and give half the road, comprehends a coming together in such manner that a collision would follow, unless their course is changed; it is not limited to those simply passing in opposite directions.

**Same:** NEGLIGENCE: PRESUMPTION : EVIDENCE. A traveler may use any 3 unoccupied portion of the highway he choses; but if a collision occurs when on the wrong side with one coming towards him the law will presume that it was caused by his negligence in being on · the wrong side, unless his presence there can be explained and justi-

fied. And if on the wrong side, and acting as an ordinarily cautious man, he could safely pass to the other side and allow one coming from the opposite direction to pass it would be his duty to do so, failing in which he would be chargeable with negligence in case of a collision. The evidence in this action is held to require submission of the question of defendant's negligence in failing to turn his automobile so as to permit plaintiff's car to pass.

Negligence: PROXIMATE CAUSE. The consequences of a negligent act need not be foreseen to render the act the proximate cause of the resulting injury; it is sufficient if the natural and inevitable result of the act.

Same: AUTOMOBILE ACCIDENT: IMPUTED NEGLIGENCE. The negligence of the driver of an automobile cannot be imputed to one riding with him as a guest.

Same: INJURY TO PASSENGER: CONTRIBUTORY NEGLIGENCE. A policeman, though off duty and riding as a guest in the automobile of another, had the same authority as a marshal to enforce the lawful operation of the machine; and by failing to do so and permitting the machine to be driven at an unlawful rate of speed he was guilty of contributory negligence, and could not recover for injuries received from a collision with another machine.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

SATURDAY, NOVEMBER 22, 1913.

ACTION for damages was tried to jury which, upon the introduction of evidence in chief for plaintiff by direction of court, returned a verdict for defendant. Thereupon plaintiff moved for new trial. The motion was sustained, and defendant appeals.—*Reversed.*

*Carr, Carr & Evans,* of Des Moines, for appellant.

*Dorn & Hoffman* and *E. A. Lingenfelter,* all of Des Moines, for appellee.

LADD, J.—Cottage Grove avenue in Des Moines extends east and west, as does University street, and both are inter-

sected by Twenty-First street running north and south. On either side of the latter are dwelling houses averaging less than one hundred feet apart between the two intersecting streets, which are a third of a mile apart, so that the speed of an automobile on November 3, 1910, might not lawfully exceed ten miles an hour. Sections 1571a, 1571h, Code Supp. On that day Reeve, an automobile chauffeur, invited plaintiff, a policeman, to take a ride with him in a Buick runabout, and at about 1 o'clock in the afternoon they started with Reeve at the wheel and plaintiff at his left and, after driving about a mile, turned in Cottage Grove avenue, going west to Twenty-First street and then turned north on Twenty-First street. There is a slight rise in the street from the corner for about three hundred feet and from there on slightly down grade to University street. The speed of the automobile is estimated by plaintiff at fifteen miles an hour, but Reeve thought it moving from twenty to twenty-five miles an hour. Plaintiff testified it was from three to five or six feet from the east curb. The defendant lived on the west side of the street, and plaintiff noticed him drive his automobile down the driveway north of his house to the east side of the street and turn south and move slowly near the east curbing. The automobiles were then about one hundred and seventy-five or two hundred feet apart. Reeve's car turned westerly in time to avoid colliding with that of defendant but ran over the west curbing against an iron post in the parking, pushed it over, and struck a tree, injuring plaintiff. The width of the street between the curbs was thirty-four feet and four inches. According to the plaintiff's testimony, as defendant's car turned south, it was seventy-five to one hundred feet north of the iron post, and Reeve's car one hundred feet, possibly a little more, to the south of it, and Reeve's car did not turn to the west side until necessary to avoid a collision and then at an angle of forty-five to ninety degrees. Mason estimated that defendant's car was six to eight feet from the east curbing and testified that he could see the track of Reeve's car from where it veered

to the west and that it began to turn seventy-five to ninety feet south of defendant's car, which was then opposite the post; it then being from six to ten feet west of the east curbing and from where it turned went straight to the post.

Reeve testified:

What first attracted my attention as I came up Twenty-first street was, after I got up along by the grade, where I could see level, I saw a car approaching on the right-hand side and the car coming toward me. I should judge when I saw it it was pretty close to the curb. I could not have passed that car on our right between him and the curb. When I approached him, I saw there was no room for me to go between him and the curb on the right-hand side because he was so close to my side of the curbing, and further when I saw I could not get through there, and he made no effort to turn and give me room, I turned to my left. He did not stop his car or give any warning or any signal that I saw. I passed his car on the left. I did not notice exactly the driveway he came out. I did not see him come out of the driveway. He was coming down along the right-hand side slowly and it was pretty hard to tell, me moving and him moving at the same time, what distance he had been running before I met him; it might have been one hundred feet or two hundred, maybe more; I could not tell. I did not come to any stop at all; I slowed down and I thought he had ample time to turn over to his side of the street before I met him. . . . As I turned to the left I tried to apply my brakes. Q. What did the car do? A. It did it so quickly that I do not know what it did.

The witness estimated the speed of his car at from twenty to twenty-two miles per hour and proceeded:

Q. So it would be your best judgment you were very close the center? A. Pretty close to the center. Q. So you came long up then pretty close to the center and Bartholomew was about five feet from the east curb. A. Four or five feet. When I got pretty close to Bartholomew I turned to the left some, not much. A person would always suppose a man would keep on his own side of the street. Q. But you knew he was not? A. I knew he was not at that time. Q. Now how much space did you have to pass through to the west of Bartholomew without running into the west curb? A. Oh, I had quite a

little space. Q. You must have had twenty-five feet, didn't you, clear space? A. No, I don't suppose quite that much. Q. He was within five feet of the curb, his car would not be over four and a half feet or five feet wide, would it? A. About five and a half feet wide, I think. Q. Well, that is ten feet and a half, and we find out that the street between the curb was thirty-four feet, that gives you twenty-three and a half feet of space, doesn't it? A. Yes, sir. Q. It looks like a big enough hole for anybody to drive through, doesn't it? A. Well, under considerations, yes. Q. Now, Reeves, you say the pavement was dry? A. Yes, sir. Q. Some time before you struck the curbing you got busy with your brake, didn't you? Some time before you went off the track you got busy with your brakes, didn't you? A. Yes, sir. Q. What did you do? Tell the jury what you did to brake that car. Tell them how you did it. Some of them, at least, are not familiar with automobiles, tell them what you did. A. Well, there is three or four brake pedals right at your feet and watching which way he was driving and which way I was driving at the same time I reached down and put on the brake with my foot. Q. How hard did you set the brake? A. Probably set it pretty hard. Q. Well, did you? A. I did. ·(He did not know whether the wheels skidded.) Q. You would not ordinarily call that a good job of steering, would you? A. Well, not a good job of steering. Q. Were you familiar with the car? A. Well, I had been driving one of that kind very often. Q. Had you ever run that particular car before? A. Well, I run that particular one around the shop. The car steered very easy; the fact is, I guess it steered a little too easy; it steered easier than the car I had been driving. It was more sensitive to the touch. Q. A little touch on that car meant more than any other car you had had hold of? A. More than any other car I had been driving then. Q. And, going at the rate of speed you were going, you missed calculation and gave it a little too much of a twist? A. Well, I guess that must have been about it.

The witness farther testified that the car belonged to Brothers; that he was sent by the Strong Motor Company to bring it to its repair shop and fix it; that Brothers told him the carbureter needed adjustment and the pump fixing; that he told plaintiff he was going to try the car out and invited

him to go along; and that he had driven the car around town some and did not mention the defects to plaintiff. Such is the evidence recited somewhat in detail. Its sufficiency is the sole question raised.

I. Appellee insists that the order granting a new trial ought not to be set aside because within the discretionary powers of the trial court, A verdict was directed for defend-

1. NEW TRIAL:
sufficiency of
evidence.

ant because of the insufficiency of the evidence to support a verdict. The granting of a new trial, then, merely held that the court was mistaken in the former ruling and that the evidence was sufficient for that purpose. The question passed on then did not involve the exercise of discretion but a question of law; that is, whether, accepting all the evidence as true, it and the inferences favorable to plaintiff to be drawn therefrom would sustain a verdict for plaintiff. The decision of such a question depends solely upon the state of the record and not what may be advisable in the administration of justice. *McLeod v. Shelly Mfg. & Imp. Co.*, 108 Ala. 81 (19 South. 326).

II. "Persons on horseback or vehicles meeting each other on the public roads shall give one-half of the same, turning to the right." Section 1569, Code. By meeting each other is not

2. HIGHWAYS:
duty of travel-
ers in passing:
statute.

meant merely passing in opposite directions, but "coming together in such manner that there would be an actual collision, or an apparent danger of one, if they should pursue their course without change of direction." And "it is only when one meets another that he is required to turn to the right. He has the right to use any part of the highway which is unoccupied and which is not desired for the use of another." *Riepe v. Elting*, 89 Iowa, 82. The general rule is there

3. SAME: negli-
gence: pre-
sumption:
evidence.

said to be that: "Where a collision occurs between the horse or vehicle of a person on the wrong side of the road and that of a person coming towards him, the presumption is that it was caused by the negligence of the person who was on the

wrong side of the road, but that his presence on that side may be explained and justified.'' In *Johnson v. Small*, 5 B. Mon. (Ky.) 27, the plaintiff was held excusable for not moving over from the left side of the road for that he could not have done so in time to avoid a collision; and in *Clay v. Wood*, 5 Esp. 44, it was adjudged that a person whose property was injured while on the wrong side of the road might recover damages if there was ample room for the party who caused the injury to pass in safety, and that issue was for the jury.

It is elementary that a traveler may make use of any portion of the highway he chooses (*Wrinn v. Jones*, 111 Mass. 360), and the circumstance that defendant ran his car to the east side of Twenty-First street is of no importance save as explaining his subsequent conduct. The car could not well have been turned to the south without making a curve which would carry it near the east curbing. And he had the lawful right to drive his car along that side; no ordinance of the city directing otherwise having been introduced in evidence until ''meeting'' the car in which plaintiff was riding. Under the statute it then became his duty to turn to the right and allow Reeve's car to pass next the east curbing, providing he, acting as an ordinarily prudent person, could have then safely turned his car so as to have done so. Of course this depended on the distance the cars were apart and the rate of speed each was moving and in this case was a question for the jury to pass on.

If defendant, acting as an ordinarily cautious man, could have safely turned his car to the right, so as to have allowed Reeve's car to pass on the other side, it was his duty to do so, and if he failed therein he must have been found to have been negligent.

III. Conceding defendant to have been negligent, were plaintiff's injuries the proximate consequence thereof? The cars did not collide. Reeve steered his to the left, and, according to the undisputed evidence, there was a space between defendant's car and the west curb line of twenty-three feet or a little more, and both Reeve and plaintiff noticed that defendant was

not turning but continued to drive his car within five or six feet of the east curbing without indicating a purpose of turning. As soon as they understood he was not going to turn, it became their duty to do so in order to avoid a collision, and this happened, according to their evidence, when "pretty close" and, according to Mason, when seventy-five or ninety feet away. Now, it is manifest that defendant's failure to turn compelled Reeve to do so. There was ample room for this. The cars were practically the same distance from the curbing and, as defendant's car was but five or five and a half feet wide, Reeve need only have swung towards the west this distance to have avoided collision. As the day was clear and the sun shining, there could have been no mistake concerning the situation of the parties and the paved way, and, but for something unexplained, it would seem the car would have passed in safety.

Of course it is not essential to constitute proximate cause that the consequences should have been foreseen. "It is sufficient if the injuries are the natural, though not the necessary or inevitable, result of the wrong; such injuries as are likely under ordinary circumstances to ensue from the act or omission in question. The test, after all, is: Would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in injury to some one? The particular result need not be such as that it should have been foreseen." *Burk v. Creamery Package Co.*, 126 Iowa, 730. Either a collision or something like that which happened would seem to be likely in a situation like that disclosed unless the car safely passes, and, though the question is close, we are inclined to regard it as one on which minds might reasonably differ, and therefore the issue as to proximate cause was for the jury.

4. NEGLIGENCE: proximate cause.

IV. It conclusively appeared that Reeve was driving the car faster than ten miles an hour along a street where residences

averaged less than one hundred feet apart, and as this was in

5. SAME: automobile accident: imputed negligence.

violation of the statute, as it then read, he was guilty of negligence. It is said, however, that his negligence was not imputable to plaintiff who was riding on invitation as a guest, and this may be conceded. *Nesbit v. Town of Garner,* 75 Iowa, 314; *Wymore v. Mahuska County,* 78 Iowa, 396; *Larkin v. Railway,* 85 Iowa, 492.

But he was a policeman wearing a star as such and carrying a revolver and, though off his assigned beat, was still clothed with the authority of enforcing the law. By section

6. SAME: injury to passenger: contributory negligence.

664 he was endowed with the same authority as marshals in making arrests, and the latter are empowered to make these in order to "diligently enforce all laws . . . for the preservation of the public welfare and good order." Section 662, Code. Though Reeve was driving at a speed in excess of that limited by statute, plaintiff interposed no objection or protest whatever, though presumably he might have required him to slow his car down to ten miles an hour. Had he done so, no argument is required to demonstrate that the accident would not have occurred. As he was in a position of authority and might have determined the speed of the car, he is not in a situation, because of being a guest, to evade responsibility for the rate at which it was being driven. His position is akin to that of a person other than the driver taking no heed of the danger ahead. The principle is well stated in an instruction approved in *Holden v. Railway,* 177 Mo. 456 (76 S. W. 973), saying:

That, although the plaintiff may not have been the driver of the wagon mentioned in the testimony, nevertheless plaintiff, situated as he was, had no right to rely implicitly upon the care and prudence of the driver on the seat beside him for his own safety, but it was his duty, if said driver was approaching said Thirteenth street, on which cars were passing, at a careless rate of speed, to attempt to have him check

his speed to a safe rate; and if the jury find that under the circumstances said wagon was approaching defendant's tracks at a careless rate of speed, and that plaintiff, situated as he was, made no effort to have said speed diminished, and that such action of the plaintiff contributed directly to said collision and his injuries, then he cannot recover, and your verdict must be for defendant.

See, also, *Lake Shore & M. S. Ry. Co. v. Boyts,* 16 Ind. App. 640 (45 N. E. 814); *Bush v. Railway,* 62 Kan. 769 (64 Pac. 624); *Davis v. Railway,* 259 Fed. 10 (88 C. C. A. 488, 16 L. R. A. (N. S.) 424).

Though having authority to control the speed of the car, plaintiff made no effort to do so but instead by his silence acquiesced in its movement at an unlawful speed and thereby was guilty of negligence contributing to his injuries, which necessarily must defeat his recovery. Having reached this conclusion, there is no escape from adjudging the first impression of the learned judge the correct one and reversing the order granting a new trial.—*Reversed.*

WEAVER, C. J., and GAYNOR and PRESTON, JJ., concur.